[Civ. No. 25303. First Dist., Div. One. June 26, 1970.]

EICHLER HOMES, INC., Cross-complainant and Appellant, v.
STEVEN ANDERSON et al., Cross-complainants and Appellants;
GENERAL MOTORS CORPORATION et al.,
Cross-defendants and Appellants.

**COUNSEL**

Danaher, Fletcher, Gunn & Ware, David Freidenrich, Leonard Ware, Carroll, Burdick & McDonough and John K. Stewart for Cross-complainant and Appellant.

Steven Anderson and Ellis Rother, in pro. per., for Cross-complainants and Appellants.

Ericksen, Ericksen, Kincaid & Bridgman, Ericksen, Ericksen, Lynch, Young & Mackenroth, Cyril Viadro, Hoge, Fenton, Jones & Appel, James B. Eggert and John B. Whitney for Cross-defendants and Appellants.

**OPINION**

**ELKINGTON, J.**—Eichler Homes, Inc. (Eichler), was engaged in the home building business. Its homes generally were built over concrete slabs in which Steven Anderson and Ellis Rother (Anderson and Rother), under contract with Eichler, installed copper tubing which formed the basis of radiant heating systems. During the Korean hostilities copper tubing became difficult to obtain so Anderson and Rother commenced using steel tubing in its stead. At first this tubing was purchased from General Motors Corporation (General Motors), later from Armco Steel Corporation (Armco).

Several years after their installation steel tubing radiant heating systems of many Eichler built homes started to fail. Investigation showed the tubing within the slabs to have become subject to widespread corrosion and leakage. A group of the homeowners became the plaintiffs of this action by seeking a judicial declaration of their rights against Eichler for such failure. Eichler then cross-complained against Anderson and Rother and General Motors and Armco, seeking to have them adjudged responsible for any recovery against Eichler by the plaintiffs. Anderson and Rother in turn cross-complained against General Motors and Armco[1]; they sought indemnification from those corporations in such amounts as they (Anderson and Rother) might be held liable to Eichler.

On the morning that the trial started Eichler compromised the claims of plaintiffs by payment to them of $72,000. No contention is made by any party that the settlement was not reasonable. The trial, to the court, then continued with respect to cross-complainant Eichler, cross-defendants and cross-complainants Anderson and Rother, and cross-defendants General Motors and Armco. It concluded with a judgment in favor of Eichler against Anderson and Rother for $68,702.94,[2] and in favor of Anderson and Rother against General Motors for $48,145.53, and against Armco for $20,557.41.

General Motors and Armco appeal from the judgment. Eichler appeals from the portion of the judgment which denied it the right "to recover judgment against cross-defendants, Anderson and Rother, for the sum of $22,000, as and for indemnity for legal fees paid in the defense of the main action herein, in addition to the sum awarded in said judgment, and denied cross-defendants and cross-complainants, Anderson and Rother, the right to recover judgment in like amount against cross-defendant, General Motors Corporation, and cross-defendant, Armco Steel Co." Anderson and Rother appeal from that portion of the judgment denying them "the right to recover judgment against cross-defendants, General Motors Corporation and

---

[1]Anderson individually answered the plaintiffs' complaint; he did not cross-complain. However, Rother, individually, and for the preexisting partnership which had dealt with Eichler, answered the complaint and also cross-complained against General Motors and Armco. The case appears to have been tried, without objection, on the theory that both Anderson and Rother had cross-complained against General Motors and Armco. Summarizing California law, Witkin, California Procedure (1967 Supp.), pages 674-675, states: "Under a long established rule of practice a point not presented by the pleadings may nevertheless be raised at the trial. If no objection is made and the case is tried on the theory that the matter is in issue, it will be so regarded on appeal."

[2]The radiant heating system of one of the plaintiffs had not been installed by Anderson and Rother. This accounts for the judgment against those parties being less than the amount of Eichler's settlement with plaintiffs.

Armco Steel Co., for the sum of $22,000 [indemnity for legal fees paid by Eichler], in addition to the sum awarded in said judgment."

The judgment was based on the trial court's conclusions of law, following appropriate findings, (1) that Anderson and Rother had *impliedly* warranted to Eichler that the steel tubing was of merchantable quality (see Civ. Code, § 1735, subd. (2)) and reasonably fit for its intended use (see Civ. Code, § 1735, subd. (1)), *and* had *expressly* warranted (see Civ. Code, § 1732) to Eichler that it was suitable for use in the plaintiffs' homes;[3,4] (2) that General Motors had *impliedly* warranted to Anderson and Rother that its tubing was of merchantable quality and reasonably fit for its intended use *and* had *expressly* warranted to Anderson and Rother that it was suitable for radiant heating systems of the type being installed by them; (3) that Armco had *impliedly* warranted to Anderson and Rother that the tubing furnished by it was of merchantable quality and reasonably fit for installation in radiant heating systems of the type installed by them, and (4) that each and all of such warranties had been breached.

There was substantial evidence that the steel tubing furnished by General Motors and Armco was not fit for use in the concrete slab radiant heat installations by Anderson and Rother. No real contention is made to the contrary. It follows that the warranties, if any there were, were breached.

Both General Motors and Armco, in effect, contend that the record discloses no evidence in support of the trial court's findings and conclusions of their respective warranties. Basic to our consideration of these appeals, then, is the substantial evidence rule. In *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805], the rule was expressed in this manner: ■ "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] ■ When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]"

Although the evidence probably would also have supported contrary findings, our examination of the record satisfies us that there was substantial evi-

---

[3]Civil Code sections 1732 and 1735 are applicable to the issues before us. They were repealed, effective 1965, but appear to have been reenacted in substance in Commercial Code sections 1205, 2104, 2313, 2314, 2315 and 2317.

[4]Anderson and Rother have not appealed from the portion of the judgment against them in favor of Eichler, based upon such warranties.

dence upholding the trial court's findings of implied and express warranties against General Motors and an implied warranty against Armco. We point out portions of the evidence tending to support the court's findings.

In the 1950-1951 period General Motors employed jobbers throughout the country for, among other things, the sale of its steel tubing for radiant heating. It was endeavoring to develop a market for this product. It offered this tubing "to the radiant panel heating trade" around August 1950. On November 10, 1950, the company wrote to the Federal Housing Administration suggesting that its tubing "would be an ideal and permanent substitution for the current practice of using copper tubing," and "would substantially reduce the price cost of installation." Approval of the tubing was requested and subsequently granted. Sometime around November or December 1950 a representative of General Motors called on Anderson and Rother. He pointed out that General Motors steel tubing was better for radiant heating purposes than that of a competitor. He went with Rother to look at their jobs and indicated that his company's tubing was good for the slab installation procedure followed by Eichler and Anderson and Rother. Anderson and Rother thereupon placed an order for General Motors steel tubing. A "red tag" was introduced in evidence. While this tag was printed *after* Anderson and Rother stopped buying tubing from General Motors, Rother testified that a tag "somewhat similar to this" was on each coil of General Motors tubing delivered to Anderson and Rother. The "red tag" gave detailed "Installation Recommendations for Radiant Heating in Concrete Slabs." It recommended concrete slab installation of the tubing in substantially, if not precisely, the manner followed by Anderson and Rother.

During the year 1951 Anderson and Rother talked to a representative of Armco about using that company's steel tubing for radiant heating installations. In detail they explained to him their method of installing such systems. Thereupon Anderson and Rother commenced buying their steel tubing from Armco. Testimony of a representative of Armco that customers were informed that they must protect the tubing from corrosion was impeached by a brochure distributed by that company in 1955 or 1956. The brochure pictured and recommended steel tubing radiant heating installations which appear to us to follow exactly the method used by Anderson and Rother in concrete slabs, without any reference to a need for corrosion protection.

■ As we have indicated the trial court concluded that General Motors and Armco had *impliedly* warranted to Anderson and Rother that their steel tubing was (1) reasonably fit for its intended use, and (2) of merchantable quality.

As pertinent here Civil Code section 1735 provided that an implied warranty arose:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which-the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

Adverting first to section 1735, subdivision (1), the evidence shows, and it appears to be conceded, that Anderson and Rother made known to General Motors and Armco the particular purpose for which their steel tubing was required and the manner in which it would be installed. General Motors and Armco, each in its turn, offered to sell their tubing for the purpose made known to them. Anderson and Rother accepted the offers, purchasing 300,000 feet of tubing from General Motors and more than 1,000,000 feet from Armco. From this evidence the trial court could reasonably infer that Anderson and Rother relied on the sellers' skill and judgment.

Section 1735, subdivision (2), states that an implied warranty arises where goods are bought by description from a seller who deals in goods of that description, that the goods shall be of merchantable quality. Here the tubing was bought by description from General Motors and Armco. In *Aced* v. *Hobbs-Sesack Plumbing Co.,* 55 Cal.2d 573, 582 [12 Cal.Rptr. 257, 360 P.2d 897], under circumstances quite similar to those before us, the court said, "With respect to sales, merchantability requires among other things that the substance *sold be reasonably suitable for the ordinary uses it was manufactured to meet."* (Italics added.) In the case at bench, beyond any doubt, the steel tubing was manufactured, among other purposes, for use in concrete slab radiant heating systems. Since the product was not suitable for that purpose an implied warranty of merchantability was breached. In *Aced* v. *Hobbs-Sesack Plumbing Co., supra,* the plumbing company contracted to install a radiant heating system in a concrete slab floor. Steel tubing was used. Numerous leaks later developed requiring replacement of the entire system. The court said (at p. 583): "There is no merit in Hobbs' contention that the evidence is insufficient to show a breach of warranty of merchantability. The evidence shows that the leaks in the tubing used in the radiant heating system were caused by corrosion. The tubing was made of

steel and was coated with plastic to prevent corrosion, which would occur if the coating was broken or scratched and not repaired. An expert testified that the coating on this type of tubing could be damaged in many ways during the normal course of installation, that the abrasive action of stones contained in the concrete in which the tubing is embedded or the boots of workmen walking over the tubing would cause its coating to chip, that workmen are required to walk on it 'in the natural course of this kind of job,' that the tubing had leaked on other jobs which had been done in the customary manner, and that its coating was "insufficient' and, 'having failed,' left only a 'piece of steel pipe that corroded in accordance with the usual laws of nature.' "

It thus is clear that the trial court's determinations of implied warranties to Anderson and Rother were supported by substantial evidence.

■ We consider now the finding of an express warranty against General Motors. Civil Code section 1732 provided "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. . . . " From the evidence here it may be reasonably concluded that General Motors and its representatives stated that their tubing was suitable for the type of radiant heating systems installed by Anderson and Rother. And as we have indicated, an inference that the representation was relied upon may reasonably be drawn. The trial court's finding of an express warranty is also supported by substantial evidence.

■ General Motors and Armco contend that there were numerous procedural errors by virtue of which the issues of express and implied warranties were not properly before the court. This situation was brought about partly by the appearance of Anderson and Rother in propria persona, and their sometimes absence from pretrial and trial proceedings. Our examination of the record discloses that the issues of express and implied warranties without objection were placed before the court and that the case was tried on those issues, among others. Neither General Motors nor Armco was prejudiced in its right or ability to respond to those or any other issues at the trial, which was in all respects fairly conducted. (See fn. 1, *ante.*)

We have, as requested by General Motors and Armco at the oral argument of this appeal, taken judicial notice (see Evid. Code, § 452, subd. (c)) of the decision and records of *Kriegler* v. *Eichler Homes, Inc.,* 269 Cal. App.2d 224 [74 Cal.Rptr. 749]. The judgment of that case became final in 1969 while the instant appeals were pending.

■ It is contended that the instant issue, whether Anderson and

Rother made express and implied warranties to Eichler, was present in *Kriegler* and was there adjudicated against Eichler; that under the doctrine of *collateral estoppel* the *Kriegler* judgment supersedes or controls the judgment here under appeal; that Anderson and Rother are therefore not liable to Eichler; and that the judgment against General Motors and Armco, whose liability rests solely on a duty to indemnify Anderson and Rother, must therefore be reversed.

We note that "Where the judgment in one suit becomes final through lapse of time or affirmance on appeal while an appeal is still pending in another court from judgment in the other action, the first final judgment may be brought to the attention of the court in which an appeal is still pending and relied on as *res judicata*." (*Domestic & Foreign Petroleum Co.* v. *Long,* 4 Cal.2d 547, 562 [51 P.2d 73].)

It is basic to the application of res judicata or collateral estoppel that the issue of the earlier action be *identical* to that in which the application is sought. (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892]; *Harbor Ins. Co.* v. *Paulson,* 135 Cal.App.2d 22, 30 [286 P.2d 870]; *Alexander* v. *Hammarberg,* 103 Cal.App.2d 872, 882 [230 P.2d 399].) The principle operates only as to an issue which was actually litigated and determined in the first action. (*Taylor* v. *Hawkinson,* 47 Cal.2d 893, 896 [306 P.2d 797]; *Stout* v. *Pearson,* 180 Cal.App.2d 211, 214 [4 Cal.Rptr. 313]; *County of Los Angeles* v. *Continental Corp.,* 113 Cal.App.2d 207, 218 [248 P.2d 157].) "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." (Code Civ. Proc., § 1911; see also *Title Guar. & Trust Co.* v. *Monson,* 11 Cal.2d 621, 632 [81 P.2d 944]; *Mitchell* v. *Jones,* 172 Cal.App.2d 580, 585 [342 P.2d 503, 77 A.L.R.2d 1404].)

From the record of *Kriegler* on file in this court it appears that a radiant heating system installed by Anderson and Rother in an Eichler home with General Motors steel tubing failed due to corrosion of the tubing. Eichler, itself held liable, had sought indemnification from Anderson and Rother because of their claimed express and implied warranty of the "radiant heating system" and its parts. The *Kriegler* findings determined that Anderson and Rother did not warrant (except for a five-year warranty, apparently to the home purchaser, neither there nor here breached) "said system orally," did not warrant "said system or any part thereof for the life of the [Kriegler] home" and did not impliedly warrant "said radiant heating system." Judgment was entered accordingly.

In the case at bench the issue as between Eichler and Anderson and Rother was the sufficiency of the *steel tubing* and whether Anderson and

Rother had warranted its fitness and merchantability. Obviously, Anderson and Rother could have warranted the steel tubing as here found, and yet at the same time not have warranted the radiant heating system and its parts, as determined by *Kriegler*. And just as obviously, the warranty issue of *Kriegler* related to the radiant heating system of the home there involved; it did not concern other systems and other homes.

We conclude that the issue of the case before us cannot reasonably be said to be identical to that which was litigated and determined in *Kriegler;* accordingly the doctrine of collateral estoppel is inapplicable.

We recognize that it may be argued that although the *Kriegler* pleadings and judgment related to a "radiant heating system" the trial there was mainly concerned with the "steel tubing" of the system. But from any view it must be agreed that the identity of issues of the two cases is far from clear. If "anything is left to conjecture as to what was necessarily involved and decided" there can be no collateral estoppel (*Talman* v. *Talman,* 229 Cal.App.2d 39, 42 [39 Cal.Rptr. 863]; *Stout* v. *Pearson, supra,* 180 Cal. App.2d 211, 216; *Blumenthal* v. *Maryland Cas. Co.,* 119 Cal.App. 563, 566-567 [6 P.2d 965]); " ' "Every estoppel must be certain to every intent, and not to be taken by argument or inference" ' " (*Stout* v. *Pearson, supra,* at p. 216). And as said in *Graves* v. *Hebbron,* 125 Cal. 400, 406 [58 P. 12], "it must appear . . . that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, the whole subject matter of the action will be at large and open to new contention, . . ."

The remaining questions before us relate to the several appeals by Eichler and Anderson and Rother from that portion of the judgment denying each of them the right to recover indemnification for attorney fees.

We first consider Eichler's appeal as it relates to indemnification from Anderson and Rother for attorney's fees. Although it might possibly be inferred from uncertain language of Eichler's cross-complaint that such relief *was* sought from Anderson and Rother, if such a demand was existent it appears to have been withdrawn at the pretrial conference. There Eichler sought only "judgment over" against Anderson and Rother if plaintiffs should recover a judgment from Eichler. Obviously the plaintiff home owners did not and could not recover attorney fees from Eichler. Further, for our examination of the trial record we find nowhere any demand for attorney fee indemnification relief against Anderson and Rother. It follows that the portion of Eichler's appeal which we have discussed is without merit. And since it can in no way be aggrieved by the failure of Anderson and Rother to recover attorney fee indemnification, the remainder of Eichler's appeal is patently without basis in reason or law.

The appeal of Anderson and Rother is likewise without merit. Representing themselves they, of course, became obligated for no attorney fees. The only relief sought by these parties against General Motors and Armco is found in the prayer of their cross-complaint "in the event [Anderson and Rother] are held liable in any amount that [General Motors and Armco] be held liable in like amount." Nor was any contention made at the trial that they were entitled to attorney fees from General Motors or Armco. The judgment has accordingly given Anderson and Rother the full relief sought by them. And it is noted that Anderson and Rother have filed no brief in support of their appeal. By letter to the court these parties "adopt" certain other briefs on file; but these briefs in no way support their appeal which as we have indicated relates only to a denial of "attorney fees."

The judgment is affirmed in its entirety. None of the parties will recover costs on this appeal.

Molinari, P. J., and Sims, J., concurred.

Petitions for a rehearing were denied July 20, 1970, and the petitions of appellant Eichler Homes, Inc., and appellant Armco Steel Corp. for a hearing by the Supreme Court were denied September 10, 1970. Mosk, J., was of the opinion that the petition should be granted.