[No. D008677. Fourth Dist., Div. One. Mar. 30, 1989.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; JACKIE F. PACKHAM, Real Party in Interest.

**COUNSEL**

Gray, Cary, Ames & Frye, William S. Boggs and Laura Whitcomb Halgren for Petitioner.

No appearance for Respondent.

Churchill & Kaplan, Robert J. Kaplan and Beth S. Schiralli for Real Party in Interest.

**OPINION**

**TODD, J.**—After the trial court overruled its general demurrer based on the doctrine of collateral estoppel, Interinsurance Exchange of the Automobile Club of Southern California (Auto Club) petitions for a writ of mandate seeking to compel the trial court to sustain its demurrer. The subject of the demurrer is the April 5, 1988, complaint of real party in interest Jackie L. Packham against the Auto Club for damages for "BAD FAITH BREACH OF INSURANCE CONTRACT (i.e., TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING); VIOLATION OF STATUTORY DUTIES; CONSTRUCTIVE FRAUD AND FRAUDULENT DECEIT."

We have concluded the issue of the effectiveness of Packham's assent to a January 1985 release she executed was finally adjudicated in a July 2, 1986, summary judgment which was affirmed on appeal. Her assent was adjudicated to be effective. Thus, the release was an effective bar to her personal injury action against Simone Billuni, who with Packham was insured by the Auto Club. The matters in Packham's present complaint, including fraud and overreaching, were within the scope of the summary judgment adjudication of the effectiveness of Packham's assent to the release, the only issue actually litigated in that action. The matters in Packham's present

complaint relate to that adjudicated subject matter and were relevant to that issue so that they could have been raised in the summary judgment adjudication of the matter of her assent. Accordingly, the summary judgment is conclusive of any matter going to the effectiveness of Packham's assent to the release, whether or not it was urged in the summary judgment. Thus, we grant the petition.

## FACTS

As a result of a December 1984 rear-end collision between Auto Club's insureds, Packham and Belluni, Packham went to Auto Club's office in January 1985 and for a payment of $1080.90 signed a release of Billuni for all claims connected with the collision. Before signing the release, Auto Club representative Mrs. Robinson told Packham she wanted to terminate Packham's claim so she would not have two open files. Robinson totaled the bills for Packham's medical treatment to date, added the car rental and other miscellaneous bills, and said she would give Packham $500 more.

There was no discussion on whether Packham was ready to settle. Nonetheless, Packham understood she was talking to Robinson about settling her claim and the settlement offer was greater than she requested or expected. Packham read the release carefully and discussed it with her husband before signing. She knew she was releasing her claim by signing the form and she intended to do so.

One month after Packham signed the release, Auto Club refused to renew her insurance. In September 1985, Packham filed her action for damages for negligence against Billuni. Billuni moved for summary judgment based on the release Packham signed and her deposition testimony. In her deposition, Packham admitted she filed the lawsuit because she was upset with the Auto Club for not renewing her insurance.

Packham opposed Billuni's motion for summary judgment on grounds she was confused about the reason for her meeting with the Auto Club, confused as to the meaning of the release and its full legal effect, and confused as to what the dollar amount of the settlement represented. She argued she did not in reality assent to the provisions of the release. The trial court granted Billuni's summary judgment motion and Packham appealed to this court.

In our unpublished opinion we pointed out, "[s]pecific issues of fraud and overreaching were not presented to the trial court." (*Packham* v. *Billuni,* (Jan. 1, 1988) D004961.) On her appeal, however, Packham for the first

time raised issues of fraud and overreaching, including assertions that Auto Club breached its duty of good faith and fair dealing to her. In this court's opinion affirming the summary judgment, we stated, in part: "We cannot consider questions not presented by the record and raised by counsel for the first time on appeal. [Citation.] Because fraud and overreaching were not presented to the trial court as grounds for avoiding the release, those issues are not properly before us." (*Packham* v. *Billuni, supra,* D004961.)

The remittitur was issued from this court on April 4, 1988.

On April 5, 1988, Packham filed the complaint for breach of the covenant of good faith and fair dealing. On August 15, 1988, the trial court overruled Auto Club's demurrer. The trial court stayed further proceedings and Auto Club filed its petition for writ of mandate on September 6, 1988. On September 19, 1988, we issued an order to show cause.[1]

## DISCUSSION

■ The doctrine of res judicata giving certain conclusive effect to a former judgment in a later action seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 188, p. 621.) ■ Concerning the aspect of res judicata applicable to this case, "in a new action on a *different cause of action,* the former judgment is not a complete merger or bar, but is effective as a *collateral estoppel,* i.e., it is conclusive on issues actually litigated between the parties in the former action." (7 Witkin, *op. cit. supra,* § 189, p. 623, original italics; see *Corral* v. *State Farm Mutual Auto. Ins. Co.* (1979) 92 Cal.App.3d 1004, 1010 [155 Cal.Rptr. 342].)

"[A] former judgment is not a collateral estoppel on *issues which might have been raised but were not*; just as clearly, it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not*." (7 Witkin, *op. cit. supra,* § 257, p. 696, original italics.)

The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, "litigation finally would end only

[1] The factual context of this case is unique, i.e., one insurance carrier with legal duties to both the plaintiff (Packham) and the defendant (Billuni) in the underlying personal injury action. If Packham had been insured by a different carrier, an action against that carrier could not have been foreclosed in a case upholding the validity of the release in favor of Billuni and his carrier. Such is not the case before us.

when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background." (*Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 216 [107 Cal.Rptr. 270].) *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652], discusses and explains the distinction between issues litigated and legal theories, as follows: "Next is the question, under what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. *If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the jugdment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.* The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable. In *Price* v. *Sixth District,* [1927] 201 Cal. 502, 511 [258 Pac. 387], this court said: 'But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it *matters which, if urged, would have produced an opposite result . . .* This principle also operates to demand of a defendant that all of its defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them.'" (Italics added.)

The issue actually litigated in the first action resulting in a summary judgment on the merits (see *State Farm etc. Ins. Co.* v. *Salazar* (1957) 155 Cal.App.2d Supp. 861, 865 [318 P.2d 210]; 7 Witkin, *op. cit. supra,* § 219, pp. 655-656) was whether Packham effectively assented to the release. Her claimed confusion as to the reason for her meeting with the Auto Club, the meaning of the settlement agreement and its full legal effect and as to what the dollar amount of the settlement represented were the particular grounds she urged in the trial court in order to reach a favorable result on the issue.

As this court pointed out in its opinion on her appeal from the adverse summary judgment, Packham did not urge in the trial court her legal theories of fraud and overreaching which, if accepted, could have produced a favorable result for Packham in the first action resulting in the summary judgment. Instead, Packham urged the fraud and overreaching theories for vitiating her assent for the first time on appeal, and for that reason this court did not consider those theories.

The fact Packham urged the fraud and over- reaching theories on her appeal from the adverse summary judgment demonstrates she could have raised those matters in the adjudication of the summary judgment motion.[2] There is no question that the factual background for the fraud and overreaching allegations is the same as that for Packham's complaint for breach of the covenant of good faith and fair dealing.

We conclude that as a result of the final adjudication of the issue of the effectiveness of Packham's assent to the release based on a factual background in which Packham could have urged theories of fraud and over-reaching as bases for vitiating her assent, Packham is precluded from asserting her cause of action for breach of the covenant of good faith and fair dealing based on the same factual background. The finally adjudicated effective assent under these circumstances of factual background identity and opportunity to assert fraud and overreaching forecloses a "bad faith" action.

The fact that this case involves actual final adjudication of the issue of the effectiveness of Packham's assent under circumstances of opportunity to assert the fraud and overreaching theories based on the identical facts, serves to distinguish this case from cases on which Packham relies. In *Vega* v. *Western Employers Ins. Co.* (1985) 170 Cal.App.3d 922 [216 Cal.Rptr. 592] (disapproved in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 310-311 [250 Cal.Rptr. 116, 758 P.2d 58]), the issue of the effectiveness of the release was not finally adjudicated in a first action. The same is true of *Corral* v. *State Farm Mutual Auto. Ins. Co., supra,* 92 Cal.App.3d 1004, where after an arbitration award in favor of the insurer but allegedly procured by fraud the insured was permitted to sue later for "bad faith." (Cf. *Rios* v. *Allstate Ins. Co.* (1977) 68 Cal.App.3d 811 [137 Cal.Rptr. 441].)

We point out that with respect to the matter of privity, which normally is an issue only with respect to the party against whom the bar of collateral estoppel is sought to be applied, the Auto Club, through its representative Mrs. Robinson, was the direct participant in the events underlying all

---

[2] Concerning the language in the opinion of this court on the appeal from the summary judgment referring to the fraud and overreaching theories as "issues," Packham suggests that language is dispositive of the concern in this case as to what "issue" was determined in the summary judgment motion and appeal. The court was not considering the issue we now consider, and thus its language choice is not dispositive. (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344], "language used in any opinion is to be understood in the light of the facts and the issue then before the court. . . . [C]ases are not authority for propositions not considered.")

aspects of this case. Moreover, it is clear from the record that the Auto Club defended the release by litigating as Billuni's agent the issue of the effectiveness of Packham's assent through the summary judgment motion and appeal. This fact establishes sufficient privity of interest in the Auto Club to apply principles of collateral estoppel at this time.

Finally, the matter of an amended pleading which Packham proffers is not properly before us in this writ proceeding. That is a matter for other, separate litigation.

## DISPOSITION

Let a writ of mandate issue commanding the superior court to vacate its order overruling the Auto Club's general demurrer and instead issue an order sustaining the demurrer without leave to amend and dismissing the action.

Kremer, P. J., concurred.

**WIENER, J.,** Dissenting.—Preliminarily, I want to acknowledge there is an intuitive pull in this case to affirm the judgment. That desire is probably motivated by the understandable wish to eliminate a case from our overburdened courts when the allegedly aggrieved party has had the opportunity to seek redress from the person whose culpability initially caused her injuries. As I shall explain, however, I believe there are a number of valid and significant reasons why the law does not permit that result in the circumstances of this case.

The majority appear to recognize the subtleties associated with analyzing when a party will be barred from relitigating a matter. Their opinion reflects an appreciation that this case presents a question of issue preclusion, i.e., we are dealing with the collateral estoppel effect of a prior judgment on an admittedly different cause of action. I agree that where an issue was previously resolved, the losing party will be estopped to relitigate that issue even when a different theory is proffered in the second action which was not raised and resolved in the first. In other words, I would be satisfied here if Packham could have raised a theory as a basis for obtaining judgment on an issue "actually litigated" in the first action against Billuni. Relitigation of that identical theory in this action would be prohibited notwithstanding that it involved a distinct cause of action against a different party, the Auto Club.

The determination of whether collateral estoppel applies requires identification of (1) the issue "actually litigated" in the first action, (2) the

theory which could have been raised to support a favorable resolution of that issue, and (3) the argument being raised in the second action which is allegedly precluded. The latter two must then be compared to assess whether they are identical.

The majority say that the "issue" in the first action was whether Packham "effectively assented to the release." (Maj. opn., *ante* at p. 182.) The "theory" which could have been raised by Packham was whether the release was a product of fraud and overreaching. (*Ibid.*) With these predicates, the majority perfunctorily conclude, "There is no question that the factual background for the fraud and overreaching allegations is the same as that for Packham's complaint for breach of the covenant of good faith and fair dealing" (*id.* at p. 183) and, accordingly, collateral estoppel applies.

Respectfully, the majority's perfunctory conclusion answers a nonquestion in the context of this case. Whether the same "factual background" underlies Packham's arguments in the two cases is irrelevant. The factual background of two cases is always similar when an issue of collateral estoppel arises. (See, e.g., *Eichler Homes, Inc.* v. *Anderson* (1970) 9 Cal.App.3d 224 [87 Cal.Rptr. 893].) What is of critical significance is whether Packham's arguments in this case could have been asserted as a basis for invalidating the release in the first action. If not, the issue actually litigated and resolved in the Packham v. Billuni action cannot estop her from alleging a different cause of action for a different injury based on a breach of different duties.

Although they identify the "issue" in the first action and the "theory" which could have been raised there, the majority do not highlight the arguments Packham seeks to raise in this the second action other than to characterize the suit as a " 'bad faith' action." (Maj. opn., *ante,* p. 183.) In this context, it is important to recognize that Packham is suing the Auto Club in its capacity as *her insurer*. She claims her insurer's fiduciary duties included obligations of disclosure and advice. Among other things, she asserts the Auto Club should have affirmatively advised her to consult with a lawyer before agreeing to sign the release. In addition, the third and fourth causes of action expressly rely on an insurer's affirmative obligations to disclose information to its insured.

The critical question we must resolve is one only implicitly addressed in the majority opinion: Could Packham have asserted her insurance company's breach of its fiduciary duties of advice and disclosure as a basis for challenging the validity of the release in her action against Billuni? Impliedly, the majority answer "yes" to this question. Unfortunately, as with most

implicit conclusions, this one is unsupported by independent analysis or citation to any authority.

There is no question that in the Packham v. Billuni action, Packham could have challenged the validity of the release she signed based on fraud and overreaching by the Auto Club. This is because the Auto Club was acting in two capacities: as Packham's insurer *and* as Billuni's insurer. As Billuni's agent, the Auto Club owed a duty to Packham not to procure an agreement by fraud. Billuni, as the principal, could not enforce an agreement procured as a result of her agent's fraud. Thus, fraud by the Auto Club acting in the capacity of Billuni's agent was a basis for contesting the release. Having failed to raise it in the first action, Packham is not entitled to relitigate that question.

As I see it, however, the Packham v. Auto Club action makes no attempt to relitigate the fraud question. Instead, Packham asserts that the Auto Club violated a different and enhanced set of duties it owed to her as her insurer. It is well established that an insurer owes broader duties to its own insured than it does to a third party claimant. (See *Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 712 [152 Cal.Rptr. 776]; cf. *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58].) Certainly an insurer is not a fiduciary as to third party claimants. It has no obligation to *advise* a claimant to retain an attorney, as Packham alleges here. (Cf. Ins. Code, § 790.03, subd. (14) which only prohibits an insurance company from directly advising a claimant *not* to obtain an attorney.)

Although the majority opinion is far from clear on the point, it may be saying that Packham could have sought to invalidate the release based on her own insurer's breach of its fiduciary duties, at least in the context where it had an inherent conflict of interest because it represented both the tortfeasor and the claimant as insureds. That the Auto Club's breach of duties owing solely to Packham without any fault on the part of Billuni should work to Billuni's detriment seems unwarranted. (Cf. *Kim* v. *Orellana* (1983) 145 Cal.App.3d 1024 [193 Cal.Rptr. 827], holding that the only remedy for malpractice by defendant's counsel in a civil case was a separate malpractice action, not reversal of the underlying judgment.)

I have been unable to locate any case on point. It seems to me, however, that the situation is quite similar to that in which a lawyer assists in negotiations and drafts a contract on behalf of two parties with adverse interests. If one of the parties later claims he was improperly advised by the lawyer, can the contract be rescinded or is the complaining party limited to a malprac-

tice action against the lawyer? This was the issue facing the court in *Croce v. Kurnit* (S.D.N.Y. 1982) 565 F.Supp. 884. There, the lawyer-defendant who was a principal to the transaction as well as counsel for other defendants drafted a proposed agreement and explained its terms to the plaintiff but failed to advise her she should consult an independent attorney. The court concluded that rescission of the resulting agreement was inappropriate unless the breach of fiduciary duty was "so fundamental as to defeat the intent or purpose of the contract." (*Id.* at p. 894.) Finding no such fundamental breach, it held that the plaintiff was limited to seeking damages from the lawyer-defendant for breach of his fiduciary duty. (Accord *Federal Deposit Ins. Corp.* v. *Kuang Hsung Chuang* (S.D.N.Y. 1988) 690 F.Supp. 192, 196-197.) In this case, the insurance company is certainly no more directly involved (and arguably less so) than the lawyer-defendant in *Croce*.

A California court reached a similar conclusion in *Moxley* v. *Robertson* (1959) 169 Cal.App.2d 72 [336 P.2d 992]. Two coplaintiffs in *Moxley* were represented by a single attorney. On appeal from an adverse judgment awarding damages to the defendant, one of the plaintiffs contended that a conflict of interest prevented the attorney from adequately representing him and thus deprived him of a fair trial. The court refused to reverse the judgment. Although implicitly acknowledging that some conflicts of interest might be so fundamental as to taint the entire judgment, the court held that complaints about the character of a lawyer's advice did not meet that standard. "Appellant's argument in the final analysis is that he was ill advised and that he would have been wise to have refused to join his coplaintiff in the action. The character and quality of the advice he received is not an issue before this court." (*Id.* at p. 75.)

Similarly here, the character and quality of the advice Packham received from her insurer prior to signing the release was simply not an issue before the court in the first action to determine the validity of the release as against Billuni. Where Billuni was in no way involved, the Auto Club's breach of its separate and independent duties to Packham *as its insured* (not as a third party claimant) was not so fundamental as to allow Packham to raise it in her action against Billuni. She was limited to doing exactly what she did: bringing an independent action for damages against the Auto Club.

In the final analysis, collateral estoppel is a doctrine designed to foster judicial economy, not to be used as a trap sprung on unsuspecting litigants. As Professor Austin Scott explained in his seminal article, "In its limited application, [collateral estoppel] is based upon a sound public policy. Care must be exercised in its application to see that it works no injustice." (Scott,

*Collateral Estoppel By Judgment* (1942) 56 Harv.L.Rev. 1, 29.) Especially where a party attempts to invoke the doctrine as to a theory which concededly was *not* litigated in an earlier action, we must be particularly certain that it *could* have been raised. Here, I am comfortable in saying that Packham could not have raised her insurer's breach of independent fiduciary duties as a means of defeating the validity of the release given to Billuni. But even if there is some doubt, it seems to me we clearly must err on the side of giving Packham her day in court. (See *Graves* v. *Hebbron* (1899) 125 Cal. 400, 406 [58 P. 12]; *Eichler Homes, Inc.* v. *Anderson, supra,* 9 Cal.App.3d at p. 234.)