[No. H008203. Sixth Dist. Feb. 19, 1992.]

PETER THIBODEAU et al., Plaintiffs and Respondents, v.
MICHAEL CRUM, Defendant and Appellant.

COUNSEL

Raymond E. Frost and Mark W. Butterfield for Defendant and Appellant.

Newman & Marcus and Edward E. Newman for Plaintiffs and Respondents.

OPINION

**CAPACCIOLI, Acting P. J.**—After arbitrating numerous construction deficiencies with the general contractor on their single-family home, plaintiffs asserted contract and tort claims against the subcontractor who constructed the driveway. Defendant subcontractor argued that the action was barred by application of the doctrine of res judicata, based upon the prior arbitration award. The court below rejected the defense of res judicata, conducted a trial, and entered judgment for plaintiffs.

On defendant's appeal, we conclude that the action is indeed barred by res judicata and reverse.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 1986, Peter and Judy Thibodeau entered into a contract with Paul Eller & Associates for the construction of a single-family home in Aptos. Assisted by several subcontractors, Eller began construction in October 1986. The project was completed beyond the contract deadline and passed county and fire department inspections in December 1987. In February 1988, the Thibodeaus moved in.

The Thibodeaus complained of numerous construction deficiencies. They initiated arbitration proceedings against Eller pursuant to the construction

contract which, in the words of the arbitrator, provided that "[d]isputes arising out of the construction project were to be resolved by arbitration . . . ." After a three-day hearing in April 1989, the arbitrator awarded Eller the original contract price, plus amounts for changes made by the Thibodeaus and other allowance items. The arbitrator awarded the Thibodeaus certain credits, including contract payments already made, as well as damages for poor workmanship and unexcused delay in the project. After setoffs, the Thibodeaus owed Eller $20,660. Because the construction contract provided for an award of attorney fees to the prevailing party and because the arbitrator believed he had no discretion in the matter, the arbitrator also awarded Eller $13,275 in attorney fees.

In August 1989, the Thibodeaus filed in superior court a petition to correct the arbitration award (see Code Civ. Proc., § 1286.6), contending the arbitrator had failed to consider outstanding mechanics' liens and that, after setoffs, the Thibodeaus, not Eller, were the prevailing parties. (Thibodeau v. Eller & Associates (Super. Ct. Santa Cruz County, 1989, No. 111065).)[1] During the pendency of the Thibodeaus' petition to correct, Eller filed a chapter 11 bankruptcy petition in federal court (see 11 U.S.C. § 1101 et seq.). Due to the automatic stay in bankruptcy (see 11 U.S.C. § 362), the superior court has never ruled on the petition to correct, and neither the Thibodeaus nor Eller has ever moved to confirm the arbitration award (see Code Civ. Proc., §§ 1287.4, 1288).

Eller subcontracted the cement work on the Thibodeau project to Michael Crum. The cement work included construction of a 5,200-square-foot circular driveway. In December 1987, shortly after completion of the driveway, the Thibodeaus sent a letter to Crum and Eller complaining that radiating cracks were appearing in the driveway and that, in some areas, chunks had broken off. In the arbitration with Eller, the Thibodeaus presented an estimate for repair of the chunks. The arbitrator inspected the Thibodeau project, including the circular driveway. Under the heading "Owner's Repairs of Poor Workmanship," the arbitrator awarded the Thibodeaus $2,261 for "Concrete driveway repair." Under the heading "Contractor's Claims for Extras," the arbitrator refused to award the contractor additional payment for "Wider driveway," "Wider parking lot," and "Add driveway base rock."

Following the Thibodeau/Eller arbitration, the radiating cracks increased and worsened. Six to eight months after the arbitration, the Thibodeaus hired a concrete expert who concluded that the driveway had not been properly

---

[1]Like the trial court, we take judicial notice of the record in the prior proceeding. (See Evid. Code, § 452; *Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486 [143 Cal.Rptr. 772].)

constructed and that repair would cost $26,194. When Crum was unresponsive to the Thibodeaus' complaints, they filed the instant action against Crum in superior court in September 1989.

Among his affirmative defenses, Crum alleged: "Plaintiffs are estoppel [*sic*] from asserting the allegedly wrongful acts described in their Complaint." Crum next filed a "Motion for judgment on the pleadings/exclusion of evidence/judgment under CCP § 631.8." Crum argued that the Thibodeaus were estopped from litigating the driveway issue because the matter had already been litigated in the Thibodeau/Eller arbitration.

The trial court denied Crum's motion and conducted a one-day court trial. The court entered judgment for the Thibodeaus in the amount of $23,933. The court relied upon the testimony of the Thibodeaus' expert that repair of the driveway would cost $26,194. The court then deducted $2,261, the amount already awarded by the arbitrator.

Crum appeals.

## THE PARTIES' CONTENTIONS

Crum argues on appeal that the Thibodeaus' suit regarding deficiencies in construction of the driveway is barred by application of the doctrine of res judicata. He contends the Thibodeau/Eller arbitration and the arbitrator's award encompassed the driveway issue. Crum argues alternatively that, if there is some ambiguity as to what is encompassed in the arbitration award, the trial court erred in "declining Crum's offer to have the Arbitrator testify at the time of trial that the *entire* driveway had been considered as part of the Arbitration Award."

The Thibodeaus maintain (1) that Crum did not adequately plead res judicata as an affirmative defense, (2) that an arbitration award cannot have a res judicata effect when it is unconfirmed and subject to a pending petition to correct, (3) that res judicata does not apply anyway because the arbitration did not concern the radiating cracks in the driveway, and (4) that the trial court did not refuse to hear testimony by the arbitrator.

## DISCUSSION

■ "The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in

a subsequent lawsuit on a different cause of action." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892].)

"[U]nder what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652]; see also *Federated Department Stores, Inc.* v. *Moitie* (1981) 452 U.S. 394, 398-399 [69 L.Ed.2d 103, 108-109, 101 S.Ct. 2424]; *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1499 [210 Cal.App.3d 1488]; *Ruby* v. *Debovsky* (1954) 126 Cal.App.2d 21, 25 [271 P.2d 983] ["[T]he law will not allow litigation to be conducted in a piecemeal fashion."]; Code Civ. Proc., §§ 1908, subd. (a)(2), 1911; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 188 et seq., p. 621.)

■ The doctrine of res judicata applies not only to judicial proceedings but also to arbitration proceedings. (*Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419].) And while it is well established that the "arbitrator derives his power solely from the arbitration agreement and has no power to decide issues not submitted" (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1091-1092 [213 Cal.Rptr. 62]; see also Code Civ. Proc., § 1286.2, subd. (d)), case law also indicates that arbitrating parties are obliged, in the manner of *Sutphin*, to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues (see generally *Corral* v. *State Farm Mutual Auto. Ins. Co.* (1979) 92 Cal.App.3d 1004, 1014 [155 Cal.Rptr. 342]; *Downer Corp.* v. *Union Paving Co.* (1959) 172 Cal.App.2d 126, 131 [342 P.2d 64] (dis. opn. of Van Dyke, P. J.); see also *Straus* v. *North Hollywood Hosp., Inc.* (1957) 150 Cal.App.2d 306, 310 [309 P.2d 541] [presumption that, when parties submit dispute to arbitration, they intend all matters in dispute to be decided]).

Judy Thibodeau testified at trial that radiating cracks began appearing "immediately after the driveway was poured" in October 1987. In December 1987, the Thibodeaus sent Crum and Eller a letter complaining "that there were numerous radiating cracks in the driveway . . . ." That was more than

one year before the arbitration hearing but, in Judy Thibodeau's words, the Thibodeaus did not seek damages for the cracks because "the arbitration was such a large thing" and they focused on more pressing problems. They obtained a prearbitration bid to repair the chunks that had broken off the driveway but did not obtain a bid to repair the cracks. Yet when counsel inquired, "So the cracks weren't that bad at that point?," Judy Thibodeau insisted, "They were. They had gotten worse. They had gotten progressively worse."

Judy Thibodeau acknowledged that "[t]he arbitrator was up to the house and walked around, and he looked at all the cracks in the driveway. Yes, those cracks were mentioned in the driveway." Peter Thibodeau was asked, "Did you bring up at all that there were cracks in the driveway at the time of the arbitration?" He responded, "I think that must have been part of it, but I don't remember bringing that up. There was so much else going on. That specific point, it must have been brought up to some degree."

■  We conclude that if the radiating cracks in the driveway were not encompassed within the Thibodeau/Eller arbitration, they most certainly should have been. The cracks began appearing immediately after construction of the driveway and well before the arbitration. The Thibodeaus were aware of the cracks and complained about them long before the arbitration. And the driveway continued to deteriorate during the pendency of the arbitration. The driveway was, in fact, within the scope of the arbitration; it is mentioned several times in the arbitration award. We can conceive of no logical reason why the arbitration should encompass the chunks but not the cracks. The fact that the Thibodeaus' attention was drawn to more egregious construction deficiencies does not excuse their failure to seek damages for the cracks through the arbitration proceeding. Nor does it exempt them from application of the doctrine of res judicata.

The Thibodeaus seek to equate this situation with several cases in which courts have held res judicata inapplicable. They rely particularly upon cases concerning a group of homes built by Eichler Homes, Inc. The homes were constructed on concrete slabs in which Anderson and Rother, under contract with Eichler, installed steel tubing that formed the basis of radiant heating systems. Anderson and Rother obtained the tubing from General Motors and Armco. Several years after installation, the steel tubing radiant heating systems of many Eichler homes failed due to corrosion.

In *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749], the court concluded that Anderson and Rother had no duty to indemnify Eichler in a suit brought by one homeowner because Anderson

and Rother had made no express or implied warranties regarding the radiant heating system. Thereafter, in *Eichler Homes, Inc.* v. *Anderson* (1970) 9 Cal.App.3d 224 [87 Cal.Rptr. 893], General Motors and Armco contended that they should not be required to indemnify Anderson and Rother because it had already been determined in *Kriegler* that Anderson and Rother had no duty to indemnify Eichler. The Court of Appeal ruled that collateral estoppel did not apply because *Anderson* concerned the sufficiency of the steel tubing only. "Obviously, Anderson and Rother could have warranted the steel tubing as here found, and yet at the same time not have warranted the radiant heating system and its parts, as determined by *Kriegler*. And just as obviously, the warranty issue of *Kriegler* related to the radiant heating system of the home there involved; it did not concern other systems and other homes." (*Id.* at p. 234.)

These cases are readily distinguishable from the situation at bar. In *Kriegler* and *Anderson*, different plaintiffs focused on different matters, resulting in the disposition of different issues. Had the same homeowner first sued on the theory that the radiant heating system was defective and then on a theory that the steel tubing was defective, res judicata may very well have applied. But collateral estoppel did not apply because, quite simply, the question whether Anderson and Rother had warranted the steel pipes was not presented or decided in the first lawsuit. Unlike the situation in *Kriegler* and *Anderson*, the two proceedings here involve the same homeowner, the same home, and the same driveway. The Thibodeaus were obliged to assert their various claims of damage to the driveway in one proceeding.

The Thibodeaus also rely upon *Neil Norman, Ltd.* v. *William Kasper & Co.* (1983) 149 Cal.App.3d 942 [197 Cal.Rptr. 198], which concerned a contract for sale of acrylic and wool sweaters to be manufactured by Kasper and delivered to Norman. Initially, Norman sued Kasper for late delivery of both lots of sweaters and for defects in the wool sweaters. In a second suit, Norman sued for defects in the acrylic sweaters. The court held that the first lawsuit did not preclude the second under principles of res judicata, as set forth in *Sutphin*, because Norman could not have known of defects in the acrylic sweaters when he filed the first suit and because he still did not know of such defects when he dismissed the first suit with prejudice. This situation is quite different from the case at hand, in which the Thibodeaus knew of the radiating cracks, watched them worsen, and complained about them long before the arbitration. The fact that the radiating cracks continued to worsen after the arbitration does not excuse the Thibodeaus' failure to arbitrate the matter.

Nor are we persuaded by other cases cited by the Thibodeaus, each of which concerned only whether the issue raised in the second litigation was

decided in the first and not whether the issue raised in the second litigation should have been raised in the first. (See, e.g., *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390 [177 Cal.Rptr. 398]; *Casad* v. *Qualls* (1977) 70 Cal.App.3d 921 [139 Cal.Rptr. 243].) The Thibodeaus quote *Nakash* v. *Superior Court* (1987) 196 Cal.App.3d 59, 68 [241 Cal.Rptr. 578], for the observation "that the line dividing those situations compelling application of the doctrine [of res judicata] from those which do not cannot be precisely drawn. (Rest.2d Judgments, § 24, com. (b).)" We note that *Nakash* also observes: "In 7 Witkin, California Procedure [3d ed. 1985] Judgments, section 246, page 685, states that in California '[i]f the second suit is on a different cause of action, as where there are successive breaches of an obligation, or separate and distinct torts, or new rights accrued since the rendition of the former judgment, there is no merger. [Citations.]'" (*Id.* at p. 69.) In this case, the line can be precisely drawn. There were no successive breaches of obligations owed the Thibodeaus, no separate and distinct torts, and no new rights accrued after the first proceeding. The arbitration, mandated by the Thibodeau/Eller construction agreement, was intended to settle all existing claims between the Thibodeaus and their general contractor and subcontractors regarding the Thibodeau project.

■ But the Thibodeaus argue that Crum waived the defense of res judicata by failing to plead it. Code of Civil Procedure section 1908.5 provides that "[w]hen a judgment or order of a court is conclusive, the judgment or order must be alleged in the pleadings if there be an opportunity to do so . . . ." As the Thibodeaus point out, however, res judicata (precluding the relitigation of claims) must be pleaded, while collateral estoppel (a subset of res judicata precluding the relitigation of issues) need not be. (See *Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 592-593 [30 Cal.Rptr. 407].) The Thibodeaus do not explain why res judicata applies here rather than collateral estoppel, and the situation is somewhat ambiguous given the nature of the prior proceeding. Because Crum seeks to bar the Thibodeaus' action in its entirety, however, we believe the doctrine of res judicata applies. (See *id.* at p. 593.) In any event, we conclude that Crum adequately, though inartfully, pleaded a res judicata defense: "Plaintiffs are estoppel [*sic*] from asserting the allegedly wrongful acts described in their Complaint." (See Code Civ. Proc., § 452 ["In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."].)

■ The Thibodeaus also contend that res judicata does not apply because the arbitration award has not been confirmed and is subject to a pending petition to correct. Any party to an arbitration may petition the court to confirm, correct, or vacate the arbitration award. (Code Civ. Proc.,

§ 1285.) A petition to vacate must be filed within 100 days after service of the award; a petition to confirm must be filed within 4 years. (Code Civ. Proc., § 1288.) Code of Civil Procedure section 1287.6 provides that an arbitration "award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." We certainly agree with the Thibodeaus that application of the doctrine of res judicata ordinarily requires a prior final judgment (*Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 18 [193 P.2d 728]) and that "a contract in writing between the parties" is ordinarily not the same as a final judgment. But in several cases, the courts have viewed an unconfirmed arbitration award as the equivalent of a final judgment.

In *Trollope* v. *Jeffries* (1976) 55 Cal.App.3d 816, 822-823 [128 Cal.Rptr. 115], the court observed: "Although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until it is confirmed [citations] and that until it is confirmed it has only the same force and effect as a contract in writing between the parties to the arbitration [citations], it is, nevertheless, the final and binding decision or judgment of the arbitrator in the exercise of his quasi-judicial function . . . . [¶] [Code of Civil Procedure] [s]ection 1283.4 provides, in pertinent part, that '. . . It [the award] shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy.' In [*Ulene* v. *Murray Millman of California* (1959) 175 Cal.App.2d 655, 663 (346 P.2d 494)] it is stated that 'A *final* award is one which conclusively determines the matter submitted, leaving nothing to be done but to execute and carry out the terms of the award. [Citations.]' . . . [¶] It is a recognized principle that an arbitration award is conclusive on matters of fact and law. [Citations.] As stated by the editors of the topic on Arbitration and Award in California Jurisprudence: 'Once a valid award is made, with the submission upon which it is founded it becomes the sole basis for any further determination of the rights of the parties with respect to any demands embraced in the submission, and the latter are merged and extinguished in the award. The award is conclusive on matters of fact and law, and all matters in the award are thereafter res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy.' (6 Cal.Jur.3d, Arbitration and Award, § 41, p. 72.)"

Similarly, in *Lehto* v. *Underground Constr. Co.*, *supra*, 69 Cal.App.3d 933, 939, the court observed: "Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata."

The observations in both *Trollope* and *Lehto* rest in part upon the very limited judicial review afforded arbitration awards. "[T]aking cognizance

that the purpose of arbitration is to settle differences in a summary manner outside of court for the purpose of expediting a decision by the use of an arbitrator, who is a private extraordinary judge chosen by the parties whose decision is called an award, we conclude that the essential adjudication in an arbitration proceeding is the award. The function of the court is limited to confirming the award as made, or to correct and confirm it as corrected, or to vacate it within the limitations and as provided by the statutes. [Code Civ. Proc., § 1286.2.]" (*Trollope* v. *Jeffries, supra,* 55 Cal.App.3d at p. 824.) "[E]very presumption favors the arbitrator's award, and the merits of the award, either on question of law or fact, are generally not subject to review." (*Lehto* v. *Underground Constr. Co., supra,* 69 Cal.App.3d at p. 939.)

The Thibodeaus cite *Kahn* v. *Pelissetti* (1968) 260 Cal.App.2d 832 [67 Cal.Rptr. 517] as "[t]he only California decision . . . which deals squarely with the issue of whether an unconfirmed award should be treated as a final judgment for purposes of res judicata . . . ." We do not view *Kahn* in the same light.

Kahn was a passenger on a city bus involved in an accident with Pelissetti, an uninsured motorist. Kahn first filed a claim against her own automobile liability insurance policy. Her insurer disputed Pelissetti's liability for the accident, took the matter to arbitration, and prevailed. Later, Kahn sued Pelissetti. The trial court determined that all issues regarding Pelissetti's liability were barred by res judicata based on the arbitration award. The Court of Appeal disagreed, noting that, under Code of Civil Procedure section 1287.6, an unconfirmed arbitration award constitutes a contract between the parties. The court observed that Pelissetti "was not a party to that contract; the question remains whether he can take advantage of it as a third party beneficiary." (260 Cal.App.2d at p. 834.)

The court answered in the negative: "The contractual relationship between [Kahn] and her insurance carrier began when she purchased, as one of the terms of her policy, the promise of the insurer to pay damages to her for any injury for which an uninsured motorist might be found liable. She did so for her own protection, without any thought of benefiting either uninsured motorists as a class or [Pelissetti] in particular. The statute under which coverage was extended also shows no intention to benefit the uninsured motorist at the expense of either the insurer or the insured . . . . In proceeding to arbitration, it is obvious that neither [Kahn] nor the insurance company was moved by any intention to benefit [Pelissetti]. The resulting arbitration award did not purport to affect respondent's interests in any way. Therefore, viewing the unconfirmed award as a contract as we must under the statute, [Pelissetti] is at most an incidental beneficiary thereof and cannot

enforce its implied covenant that he is not liable to [Kahn]." (260 Cal.App.2d at pp. 834-835; see Ins. Code, § 11580.5, codifying the holding in *Kahn*.)

Thus, the *Kahn* court did not hold that an unconfirmed arbitration award can never have a res judicata effect but only that it would not have such an effect under the particular circumstances of that case. We conclude that, under the particular circumstances of this case, the unconfirmed arbitration award should have a res judicata effect. Like Pelissetti, Crum is a third party to the contract arising out of the Thibodeau/Eller arbitration, but Crum's relationship to the parties is quite different from Pelissetti's. As a subcontractor, Crum contracted with the general contractor, Eller. The subcontract was subject to the Thibodeau/Eller construction contract, which provided that disputes arising out of the project be resolved by arbitration. In fact, the Thibodeau/Eller arbitration concerned work done not only by Eller directly but also by subcontractors engaged by Eller. Unlike the situation in *Kahn*, the parties in this case anticipated the involvement of third parties, i.e., subcontractors, at the time the construction contract was executed and the arbitration was intended to resolve disputes arising out of the work of such third parties.

Nor are we troubled by the pendency of a petition to correct the arbitration award. The petition concerns only the arbitrator's reluctant determination that Eller was the prevailing party and was, therefore, entitled to an award of attorney fees. An eventual decision on the petition to correct will not otherwise affect the substance of the arbitration award. (See Code Civ. Proc., § 1286.6.)

### DISPOSITION

The judgment is reversed. Costs on appeal to appellant.

Premo, J., and Cottle, J., concurred.