Filed 4/25/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R. MICHAEL WILLIAMS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DOCTORS MEDICAL CENTER OF MODESTO, INC. et al., <br><br> Defendants and Respondents. | F084700/F085710 <br> (Consolidated) <br><br> (Stanislaus Super. Ct. No. CV-20-004732) <br><br> **ORDER MODIFYING OPINION** <br> **[No Change in Judgment]** |

**THE COURT:**

It is ordered that the opinion filed herein on March 27, 2024, be modified as follows:

1. On page 1, the second paragraph beginning "Arnold & Porter" is deleted and replaced with:

> Arnold & Porter Kaye Scholer, Sean M. SeLegue, Samuel E. Sokolsky; Law Offices of James M. Braden and James M. Braden for Plaintiff and Appellant.

2. All references to "MCE" are replaced with "MEC."

There is no change in the judgment.

POOCHIGIAN, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

Filed 3/27/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R. MICHAEL WILLIAMS,<br><br>　　Plaintiff and Appellant,<br><br>　　　　v.<br><br>DOCTORS MEDICAL CENTER OF MODESTO, INC., et al.,<br><br>　　Defendants and Respondents. | F084700/F085710<br>(Consolidated)<br><br>(Stanislaus Super. Ct.<br>No. CV-20-004732)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Arnold & Porter Kaye Scholer, Sean M. Selegue, Samuel E. Sokolsky; Law Offices of James M. Braden and James M. Braden for Plaintiff and Appellant.

Davis Wright Tremaine, Thomas R. Burke, Terri D. Keville, Anna R. Buono, and Miriam R. Swedlow for Defendants and Respondents Doctors Medical Center of Modesto, Inc., Tenet Healthcare Corporation, Warren Kirk, Mark Fahlen, Marny Fern, and Cheryl Harless.

Pollara Law Group, Dominique Pollara, and Frances Bruce for Defendants and Respondents Hospitalists of Modesto Medical Group, Inc., Arun Manoharan, and Li Huang.

-ooOoo-

This case involves appellant Dr. R. Michael Williams's ability to practice medicine, have access to his admitted patients, and have privileges at respondent Doctor's Medical Center of Modesto (DMCM). The trial court granted two separate anti-SLAPP motions,[1] one by DMCM, Tenet Healthcare Corporation, Warren Kirk, Dr. Mark Fahlen, Marny Fern, and Cheryl Harless ("DMC Respondents") and the other by respondents Hospitalists of Modesto Medical Group, Dr. Arun Manoharan, and Dr. Li Huang ("Hospitalist Respondents") (collectively "Respondents"). The court also awarded Respondents' their attorney fees.

Through this appeal, Williams challenges the granting of the anti-SLAPP motions and the awards of attorney fees.[2] With respect to the SLAPP orders, Williams contends that the trial court erred by: (1) finding Respondents met their burden of showing that his claims arose from protected activity; (2) estopping him from arguing that his claims did not arise from protected activity by Respondents; and (3) finding that he failed to establish a probability of prevailing on his claims. With respect to attorney fees, Williams contends because he has established that the court erred in granting the anti-SLAPP motions, the derivative award of attorney fees must be reversed. Respondents counter that Williams's challenge to attorney fees is redundant or moot, and the Hospitalist Respondents have filed a combined motion to dismiss and request for an award of costs as sanctions. We reverse both the granting of the anti-SLAPP motions and the award of attorney fees, deny the motion to dismiss, and deny the request for sanctions.

---

[1] "SLAPP" refers to a " 'strategic lawsuit against public participation,' " and an "anti-SLAPP motion" refers to the special motion to strike provided by Code of Civil Procedure section 425.16. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)

[2] Williams filed two separate appeals, the first challenging the SLAPP ruling and the second challenging the award of attorney fees. For administrative purposes, the two appeals have been consolidated under appeal number F084700.

## FACTUAL BACKGROUND

Williams is a board certified oncologist who practices medicine and treats patients in the Modesto area. Williams primarily practices in an independent clinic, but since 2003 has had privileges at DMCM, which is an acute-care hospital. Patients who are admitted to DMCM are assigned a hospitalist. A hospitalist is a physician who specializes in caring for patients in a hospital setting. The hospitalist acts as the patient's attending physician and decides what other physicians and specialists may care for the patient while the patient is admitted at DMCM. Hospitalists are not required to enlist the help of any particular specialists, even if one is requested by the patient or the patient's family. Once the hospitalist enlists other specialists, the specialists may speak with the patient's family about treatment and care and may enter treatment orders for the patient.

For a number of years, Williams and Respondents enjoyed a cordial professional relationship. However, around 2018, the relationship markedly changed for the worse. The parties disagree as to why the relationship changed, who is at fault for the change, and the repercussions of the change. Williams contends that he advocates for the best possible care for his patients and that the Respondents improperly treat cancer patients by prematurely urging only palliative care with an eye towards cost-savings. Williams made a number of complaints regarding DMCM hospitalists and their treatment of himself and his patients. Respondents did not formally address Williams's complaints, but instead allegedly treated Williams with hostility, disrespect, and unprofessionalism and began investigating him. For their part, Respondents contend that interactions with Williams became challenging, antagonistic, and strained. Williams would not accept the necessary limits of a consulting physician and would criticize (sometimes in front of patients and their families) the medical decisions made at DMCM by the Hospitalist Respondents. Respondents contend that the actions of Williams and his staff involved significant disagreements over patient care and unprofessional communication, both of which led to barriers for effectively treating patients, particularly when palliative care was at issue or

3.

when Williams had given a patient or family false hope. As a result, complaints were made against Williams for unprofessional, bizarre, or erratic behavior.

The strained relationship came to a head in January 2020. On January 8, 2020, DMCM's Medical Executive Committee (MCE) informed Williams in writing that interviews with medical staff and DMCM employees revealed serious concerns over Williams's behavior, "which directly impact the clinical care of patients treated at [DMCM]." The MCE required Williams to attend a peer review meeting on January 31, 2020, to address nine areas of alleged misconduct, including misconduct occurring in specific patient cases.

On January 31, 2020, Williams and the MCE met to address the concerns identified in the January 8 letter. The meeting was cut short because Williams had to leave early for a medical emergency. It does not appear that the meeting ever resumed, nor does it appear that the DMC Respondents formally revoked Williams's privileges or formally disciplined Williams for his conduct at DMCM. Nevertheless, Williams responded in writing to the issues raised by the January 8 letter. Williams provided supportive declarations, identified inaccurate dates in the January 8 letter, and denied that his conduct adversely affected patient care. Following the January 31, 2020 meeting, Williams maintains that Respondents have limited, abridged, and interfered with his medical practice, including engaging in conduct that amounts to a de facto restriction on his privileges at DMCM without due process.

Beginning in 2020, Williams filed two lawsuits against Respondents based on their treatment of him. The second lawsuit is the subject of this appeal.

## PROCEDURAL BACKGROUND

### First Lawsuit

On January 29, 2020, Williams filed suit against Respondents, as well as numerous other hospitalists, medical staff, and DMCM employees (First Lawsuit). The last operative complaint in the First Lawsuit was the Second Amended Complaint (SAC),

4.

filed on February 26, 2020. The SAC identified the following 12 causes of action: (1) retaliation under Business & Professions Code section 2056; (2) retaliation in violation of Health & Safety Code section 1278.5; (3) violation of Business & Professions Code section 809; (4) interference with right to provide medical care; (5) intentional infliction of emotional distress; (6) declaratory relief; (7) temporary restraining order and preliminary and permanent injunctive relief; (8) defamation; (9) breach of contract; (10) breach of implied covenant of good faith and fair dealing; (11) antitrust/unfair business practices; and (12) wrongful effective termination of hospital privileges. Among other things, the SAC sought injunctive relief against Respondents and included allegations of a number of allegedly defamatory statements against Williams. References to the defamatory statements appear in most of the causes of action either through incorporation by reference, identification of specific statements, or a general reference to false statements.

In June 2020, Respondents filed anti-SLAPP motions under Code of Civil Procedure section 424.16, subdivision (b).[3] Respondents argued that the trial court "should strike all claims in the [SAC] that arise from protected conduct."[4] In relevant part, Respondents argued that "many of the actionable statements" were either made at or in connection with a peer review proceeding, or dealt with Williams's competence, and thus, were protected by section 425.16, subdivision (e). No other type of protected activity was identified by Respondents.

---

[3] All further undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

[4] The Hospitalist Respondents joined the DMC Respondents' anti-SLAPP motion and requested the same relief on the same grounds as the DMC Respondents and incorporated by reference the DMC Respondents' motion and supporting memorandum.

On September 3, 2020, Williams filed a declaration along with supporting exhibits in opposition to the anti-SLAPP motions. However, the next day, Williams filed a dismissal without prejudice under section 581, subdivision (b)(1).

In October 2020, Respondents filed motions for attorney fees under section 425.16, subdivision (c)(1). The DMC Respondents' fee motion explained that the SAC "attacked [their] attempts to engage with [Williams] through peer review," and that their anti-SLAPP motion attempted "to strike many of [Williams's] claims .…" The DMC Respondents' fee motion identified the only protected activity as activity involving peer review and comments about Williams's competency. The Hospitalist Respondents joined and incorporated by reference the DMC Respondents' fee motion. The Hospitalist Respondents' joinder explained that the anti-SLAPP motion sought "to bar [Williams's] claims that arose from peer review activities as well as statements concerning a physician's competence and qualifications .…" The Hospitalist Respondents' joinder also identified only statements made in connection with peer review and statements concerning Williams's competence and qualifications as protected activity.

On November 9, 2020, Williams filed an opposition to the motion for attorney fees. In part, Williams argued the SAC's references to peer review processes were incidental or collateral to the main point of the lawsuit. However, Williams did not challenge the amount of fees requested by Respondents.

On September 30, 2021, the trial court issued an order granting Respondents' separate motions for attorney fees ("the Fee Order"). The court granted the entire amount of Respondents' fees without deduction and noted that Williams failed to challenge the amount of the requested fees. In granting attorney fees, the Fee Order stated in part:

> "The allegations contained in [the SAC] were based almost entirely upon activity that is protected pursuant to Section 425.16. The protected activity relied upon was not "incidental" as Plaintiff argues – it was fundamental. Indeed, the fact that [Williams] dismissed his SAC rather than oppose the special motions to strike is an admission of this fact.

6.

Whether broadly construed as part of the peer review process, or as statements and comments made as a matter of public interest – i.e.[,] related to physician's "qualifications and competence" – the SAC's causes of action were problematic."

**Second Lawsuit**

On October 23, 2020, Williams filed a second lawsuit against Respondents (the Second Lawsuit). After the trial court granted a demurrer, which included permission for Respondents to file anti-SLAPP motions, Williams filed a First Amended Complaint (FAC) on November 15, 2021. The FAC identified the following eight causes of action: (1) violation of Business & Professions Code section 809; (2) interference with right to provide medical care; (3) wrongful de facto interference with hospital privileges; (4) antitrust violations; (5) unfair business practices violations; (6) intentional interference with prospective economic advantage; (7) negligent interference with prospective economic advantage; and (8) battery. These claims are a subset of the claims previously alleged in the First Lawsuit's SAC.

The FAC in relevant part alleged that Respondents engaged in the following acts with the intent to limit, interfere with, and abridge Williams's medical practice: (a) eliminating the expense of having to care for cancer patients by removing them from hospital care and preventing Williams from effectively caring for them; (b) implementing a bonus structure that facilitates eliminating the expense of cancer patients, all to the benefit of the Hospitalist Respondents and the detriment of Williams; (c) acting to shift patient care aware from Williams and his clinic and to the Hospitalist Respondents and DMCM medical staff; (d) prematurely moving patients away from Williams's care to hospice where they were expected to die with relative efficiency; and (e) interfering with Williams to practically function in caring for his patients by limiting his ability to access patient files and records.

The FAC also contained allegations that addressed the first lawsuit. The FAC alleged that the First Lawsuit focused on the Respondents' campaign to destroy his

7.

medical practice through the MCE's "peer review" process of January 2020 and also focused on a large number of false, malicious, and defamatory statements. The FAC alleged that the focus on peer review and speech was flawed because the SLAPP statute protects such conduct. The FAC explained that once the Respondents filed their anti-SLAPP motions, Williams decided to voluntarily dismiss the First Lawsuit because he believed that the suit's focus on peer review and speech activities would not survive the anti-SLAPP motion. The FAC further explained that the Second Lawsuit is based on actions by Respondents other than false speech and peer review, such as restricting Williams's privileges at DMCM without following due process and limiting his access both to his patients who were admitted to DMCM and to his patients' records. The FAC expressly alleges that it "does not allege wrongs or facts arising from any protected peer review activities or constitutionally protected petition or speech about a public issue or an issue of public interest," and that "[a]ny reading of this [FAC] which would implicate such activities is disavowed as excluded from this lawsuit."

After the FAC was filed, the DMC Respondents and the Hospitalist Respondents filed separate anti-SLAPP motions. In relevant part, Respondents relied on the First Lawsuit's Fee Order to argue that all of the FAC's causes of action were based on SLAPP protected activity and that issue preclusion prevented Williams from contending otherwise.

After a hearing, the trial court granted both motions and dismissed the FAC on May 27, 2022 ("the SLAPP Order"). In relevant part, the court ruled:

> "[T]he Court finds that the current case is a [SLAPP]. It addresses the same primary right (or rights) addressed in Stanislaus County Superior Court Case No. CV-20-000630 – *Williams v. Doctors Medical Center, Inc. et al* – and the Court in Case No. CV-20-000630 concluded that the earlier case was a SLAPP which reached protected activity on the part of the defendants therein – the same defendants named in this matter. [Williams's] "disavowal" of the basis for the current complaint and his (alleged) "removal" of all references to the peer review process from the current complaint simply does not change this fact. The Court applies issue

8.

preclusion to establish that the first prong of [section 425.16] is met in this matter. See e.g. [*South Sutter LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634]."

On July 21, 2022, Williams filed a notice of appeal challenging the dismissal of the FAC through the SLAPP order.

On July 26 and 27, 2022, Respondents filed motions for attorney fees.

On December 20, 2022, the trial court granted the Respondents' motions and awarded fees against Williams.

On February 8, 2023, Williams filed a notice of appeal challenging the award of attorney fees.

## DISCUSSION

## I.      Respondents' Anti-SLAPP Motions

### A.      *Parties' Arguments*

Williams argues that the trial court erroneously granted the Respondents' anti-SLAPP motions. In part, Williams avers that the SLAPP Order must be reversed because Respondents failed to meet their burden of demonstrating that their protected conduct formed the basis of any of the FAC's causes of action. Williams contends that none of the actions that form the basis of his claims involved protected activity. Williams avers that the court erroneously relied on issue preclusion and the case of *South Sutter LLC v. LJ Sutter Partners, L.P.*, *supra*, 193 Cal.App.4th 634 (*South Sutter*) to find that the causes of action involved protected activity. Williams argues that issue preclusion does not apply because the Fee Order and the SLAPP Order involve different issues, and it cannot adequately be determined what issues were actually decided in the Fee Order. Williams also argues that *South Sutter*'s discussion of issue preclusion is unsound and incompatible with recent California Supreme Court authority.

Respondents argue in relevant part that the trial court correctly followed *South Sutter* and that all elements of issue preclusion apply in this case. Respondents argue that the Fee Order actually and necessarily decided that all of the causes of action in the SAC

9.

were based on protected activity. Because each cause of action alleged in the FAC was also alleged in the SAC, Respondents contend that Williams is estopped from arguing that the FAC's claims are not based on protected activity. Respondents also argue that it would be improper and contrary to the SLAPP statute and established authority to permit Williams, who acknowledged that he dismissed the SAC because it would not have survived the anti-SLAPP motion, to evade the rulings of the First Lawsuit by filing and pursuing the Second Lawsuit.

Williams has the stronger argument.

## B. *Legal Standards*

### 1. Anti-SLAPP Motions

Under California law, a cause of action arising from a person's act in furtherance of the "right of petition or free speech under the [federal or state constitution] in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1); see *Bonni*, *supra*, 11 Cal.5th at p. 1009.) Courts evaluate a special motion to strike/an anti-SLAPP motion through a two-step process. (*Bonni*, at p. 1009; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Under the first step, the defendant bears the burden of establishing that a challenged cause of action or claim arises from activity protected by section 425.16, subdivision (e). (See *Bonni*, at p. 1009; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) Under the second step, for each claim that arises from protected activity, the plaintiff bears the burden of demonstrating minimal merit of those claims by establishing a probability of success. (See *Bonni*, at p. 1009; *Baral*, 1 Cal.5th at p. 384.) Only a claim or cause of action that "satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even minimal merit," will be stricken. (*Navellier*, at p. 89.)

10.

With respect to the first step, a claim or cause of action arises from protected activity when it is based on or rests on protected activity. (See *Bonni*, *supra*, 11 Cal.5th at p. 1010; *Navellier*, *supra*, 29 Cal.4th at p. 89.) That is, a claim or cause of action may be stricken " 'only if the [protected activity] *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*), quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, at p. 1009; see also *Wilson*, at p. 884; *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 760.) "Section 425.16 is not concerned with how a complaint is framed, or how the primary right theory might define a cause of action." (*Baral*, *supra*, 1 Cal.5th at p. 382.) Instead, courts are to consider the elements of a challenged claim and what actions by the defendant supply those elements, and consequently form the basis for liability. (*Bonni*, at p. 1009; *Park*, at p. 1063.) In other words, after demonstrating that its conduct constitutes protected activity, a defendant must then demonstrate that its protected conduct supplies one or more elements of a plaintiff's claim. (*Wilson*, at p. 887.) Allegations that are " 'merely incidental,' " or " 'collateral,' " or that merely provide context without actually supporting a claim for recovery are not subject to being stricken through the anti-SLAPP statute. (*Baral*, at p. 394.) For causes of action that are based on multiple acts, some of which constitute protected activity and some of which do not, i.e., a " ' "mixed cause of action," ' " courts disregard acts that do not constitute protected activity. (*Bonni*, at p. 1010; *Baral*, at p. 396; *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 459 (*Pech*).) Further, "[i]f a cause of action has multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, [the moving party] will not carry its first-step burden as to those claims."

(*Bonni*, at p. 1011; *Pech*, at p. 459.)  In deciding whether a defendant has satisfied the first step, courts consider the "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability … is based." (§ 425.16, subd. (b); *Navellier*, at p. 89.)  The determination that a defendant has met the first step is reviewed de novo. (See *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250; *Park*, at p. 1067.)

### 2.      Issue Preclusion/Collateral Estoppel

The doctrine of collateral estoppel or issue preclusion " 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896; see *Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 348.)  In order for issue preclusion to apply, the following elements must be met:  (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  (*People v. Strong* (2022) 13 Cal.5th 698, 716; *Kaur*, at pp. 348–349; see also *Samara v. Matar* (2018) 5 Cal.5th 322, 327.)  " 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 (*Hernandez*); *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 538.)  An issue is "actually litigated" if it was "properly raised, submitted for determination, and determined in [a] proceeding." *Hernandez*, at p. 511; *In re Marriage of Brubaker & Strum*, at p. 538.)  An issue will be considered " ' "necessarily decided" ' " so long as the issue was not " ' "entirely unnecessary" ' " to the judgment in the prior proceeding.  (*Samara v. Matar*, at p. 327; *In re Marriage of Brubaker & Strum*, at p. 538.)  The party asserting issue preclusion has the burden of establishing the above elements.  (*People v. Strong*, at p. 716; *Kaur v.*

*Foster Poultry Farms LLC*, at p. 348.) "Where there is doubt about the application of issue preclusion, it should not apply." (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 186; *Flynn v. Gorton* (1989) 207 Cal.App.3d 1550, 1554; cf. *Little v. United States* (9th Cir. 1986) 794 F.2d 484, 487 [applying federal law and noting that "if there is doubt, collateral estoppel will not be applied …"].) Stated differently, "[i]f 'anything is left to conjecture as to what was necessarily involved and decided' there can be no collateral estoppel." (*Eichler Homes, Inc. v. Anderson* (1970) 9 Cal.App.3d 224, 234; see also *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1520; *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 357.) A lower court's application of issue preclusion is reviewed de novo. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684; *Union Pacific Railroad*, at p. 156.)

### C. *Analysis*

#### 1. **Trial Court's Rationale**

The trial court's finding regarding "primary rights" and citation to *South Sutter* show the court was aligning itself with *South Sutter*.

##### a. ***Primary Rights Theory in General***

In California, the "primary right theory … provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a primary right gives rise to but a single cause of action. A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681; see also *Baral*, *supra*, 1 Cal.5th at p. 393.)

### b. *South Sutter Decision*

In *South Sutter*, the plaintiff dismissed a complaint without prejudice a week after the defendant filed an anti-SLAPP motion. (*South Sutter*, *supra*, 193 Cal.App.4th at p. 647.) The plaintiff then filed a new lawsuit against the defendant. (*Ibid.*) The new lawsuit omitted a number of allegations made in the first lawsuit but contained no new facts. (*Id.* at p. 648.) After the new lawsuit was filed, the defendant moved in the first lawsuit for attorney fees pursuant to section 425.16, subdivision (c). (*South Sutter*, at p. 647.) The motion for attorney fees was granted, and the trial court found among other things that the causes of action arose from protected activity. (*Ibid.*) The defendant then filed an anti-SLAPP motion in the new lawsuit, and the trial court granted the motion. (*Id.* at pp. 649, 651.) With respect to the first part of the SLAPP analysis, the court found that defendant had met its burden of establishing protected activity because the two lawsuits involved the same primary right and the attorney fee order in the first lawsuit had determined that the primary right was a SLAPP. (*Id.* at p. 651.)

The Court of Appeal agreed with the trial court. (*South Sutter*, *supra*, 193 Cal.App.4th at p. 659.) *South Sutter* explained that it reviewed the "primary rights theory as it relates to defining a cause of action for purposes of the SLAPP statute" and concluded that the primary rights theory operated "to bar relitigation of the first prong of the anti-SLAPP motion under the principle of direct estoppel." (*Ibid.*) *South Sutter* began its analysis by holding, "[f]or purposes of an anti-SLAPP motion, ' "[a] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." ' " (*Ibid.*) *South Sutter* then discussed the primary right theory in general and its application in res judicata, including both claim and issue preclusion.[5] (*Id.* at pp. 659–

---

[5] In the past, the term " 'res judicata' has been used to encompass both claim preclusion and issue preclusion .…" (*Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at p. 896, fn. 7.)

14.

661.) *South Sutter* concluded from these general principles that "if a second lawsuit arises from the same cause of action on which the first lawsuit was based, i.e., the same wrongful act by the defendant that breached the plaintiff's primary right, direct estoppel will bar relitigating issues in the second action that were litigated and determined in the first action." (*Id.* at p. 661.) Although the Court of Appeal was unaware of a reported opinion in which direct estoppel was applied in an anti-SLAPP context, "if the second action attacked by an anti-SLAPP motion is based on the same 'cause of action' or primary right as the first action which was successfully attacked by an anti-SLAPP motion," there was no reason why direct estoppel should not apply. (*Ibid.*) *South Sutter* then identified the five elements of direct estoppel[6] and, considering the primary right theory's definition of a cause of action, concluded that the trial court's attorney fees order in the first lawsuit met these elements. (*Id.* at p. 662.)

### c. *Applicability of South Sutter to this Case*

Admittedly, the procedural posture of *South Sutter* is quite similar to this case. Nevertheless, we cannot follow *South Sutter* because its analysis is inconsistent with later binding Supreme Court authority. Five years after *South Sutter* was published, our Supreme Court in *Baral* found the primary right theory to be "ill-suited to the anti-SLAPP context." (*Baral*, 1 Cal.5th at p. 395.) *Baral* determined that applying the primary right theory's understanding of an indivisible cause of action in the SLAPP context would be contrary to the legislative intent behind the " 'special motion to strike,' " which was meant to challenge particular allegations or claims and would not adequately answer the question of how to deal with a complaint that contained mixed

---

[6] In current practice, both direct and collateral estoppel are referred to as " 'issue preclusion.' " (*Samara v. Matar*, *supra*, 5 Cal.5th at p. 326.) Thus, the five elements of direct estoppel identified by *South Sutter* are unsurprisingly the same elements of collateral estoppel. (Cf. *Hernandez*, *supra*, 46 Cal.4th at p. 511 [elements of collateral estoppel] with *South Sutter*, *supra*, 193 Cal.App.4th at pp. 661–662 [elements of direct estoppel].)

15.

causes of action.  (*Id.* at p. 394; see *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1170.) Because the primary right theory was inconsistent with legislative intent, and is "notoriously uncertain in application," the Supreme Court rejected application of the primary right theory's understanding of a " 'cause of action' " to section 425.16, subdivision (b)(1)'s use of the term " 'cause of action.' " (*Baral*, at pp. 394–395; *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 595, fn. 6; *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 875, fn. 5; *Crossroads Investors L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 775, fn. 8; *Sheley v. Harrop*, 9 Cal.App.5th at p. 1170; see also *Pech*, *supra*, 75 Cal.App.5th at p. 458.)  Instead, *Baral* held that a "cause of action" for purposes of section 425.16, subdivision (b)(1) refers to "*allegations of protected activity that are asserted as grounds for relief.*"  (*Baral*, at p. 395; *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina LLC* (2021) 67 Cal.App.5th 1149, 1157–1158.)

As a result of *Baral*'s definition of "cause of action," courts do not analyze or consider a "SLAPP-challenged" cause of action or claim in terms of the primary right involved, rather, as explained above, the analysis is based only on the particular factual allegations that form the basis of the cause of action or claim.  (See *Bonni*, *supra*, 11 Cal.5th at pp. 1010–1011; *Baral*, *supra*, 1 Cal.5th at p. 395; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 886, fn.11; *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 43–44; *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 423.)  That is, the general right possessed or wrong suffered by a plaintiff is not considered or assessed, rather, only the specific allegations that supply the elements of a cause of action, and thus form the basis of the cause of action, are assessed.  (See *Bonni*, at pp. 1009, 1015; *Baral*, at pp. 382, 395–396; *Wilson*, *supra*, 7 Cal.5th at pp. 884, 887; *Park*, *supra*, 2 Cal.5th at p. 1063.)  Moreover, the assessment is limited to factual allegations that constitute protected activity.  (*Bonni*, at pp. 1010, 1012; *Baral*, at p. 396.)

16.

If a complaint involves a mixed cause of action, the factual allegations that support a claim within the mixed cause of action, but that do not constitute SLAPP protected activity, are disregarded and simply not evaluated as part of an anti-SLAPP motion. (*Bonni*, at pp. 1010–1012; *Baral*, at p. 396; *Pech*, *supra*, 75 Cal.App.5th at p. 459.) Thus, no assessments or determinations are made concerning claims within a mixed cause of action that are not based on SLAPP protected activity. (See *Bonni*, at pp. 1010–1012; *Baral*, at p. 396; *Pech*, at p. 459.)

With respect to issue preclusion, although the doctrine was not before it, we think the *Baral* court's analysis necessarily shows how issue preclusion should apply to prior step one SLAPP rulings. *Baral* means that when the first SLAPP question is affirmatively answered, the only issue that is resolved is whether the specific allegations that supply an element of a claim constitute protected activity. The general primary right of the plaintiff is not analyzed or considered, (*Baral*, *supra*, 1 Cal.5th at p. 382), and issues regarding claims that are not based on protected activity are not resolved, (*Bonni*, *supra*, 11 Cal.5th at pp. 1010–1012; *Wilson*, *supra*, 7 Cal.5th at pp. 884, 887; *Baral*, at p. 396), even if the claims involve the same primary right as the claims based on protected activity. (Cf. *Gaynor v. Bulen*, *supra*, 19 Cal.App.5th at p. 878 [explaining that "an anti-SLAPP motion may be used to strike particular claims of protected activity even without defeating a pleaded 'cause of action' or 'primary right' "].) Therefore, given the nature of the step one SLAPP analysis, the step one findings of a prior anti-SLAPP motion will have preclusive effect only as to the specific allegations that were found to be protected activity and to supply an element of a cause of action or claim. (Cf. *Hoang v. Tran* (2021) 60 Cal.App.5th 513, 530 [applying issue preclusion to a prior first question SLAPP ruling in the same case where the claims were based on a defamatory news article, the issues were identical, and the court "could not have granted [the defendant's] anti-SLAPP motion unless it found that appellant's statements in the article had been made 'in connection with an issue of public interest' "].) If an element of a

cause of action or claim is not based on a specific allegation that was previously determined to constitute protected activity, then the prior anti-SLAPP ruling will not have preclusive effect.

As *South Sutter* relies on the primary right theory's understanding of a "cause of action" in its evaluation of the anti-SLAPP motion and issue preclusion, *South Sutter* is contrary to *Baral* and cannot be applied in this case. Prior to this opinion, we are aware of no published opinion that had analyzed *South Sutter* in light of *Baral*, which makes the trial court's reliance on *South Sutter* understandable. Nevertheless, *South Sutter*'s dependency on the primary rights understanding of a cause of action for purposes of anti-SLAPP motions cannot be squared with *Baral*. Therefore, the court's reliance on primary rights and *South Sutter* in finding that Respondents had met their burden under the first SLAPP question was error.[7]

### 2. Application of Issue Preclusion

Through our de novo review, we may affirm the trial court's granting of the anti-SLAPP motion on any theory that may be applicable to the case. (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306–1307.) Apart from *South Sutter*, Respondents argue the record reflects that the elements of issue preclusion were met.

---

[7] The Hospitalist Respondents argue that Williams forfeited his argument that *South Sutter* is incompatible with *Baral* by not raising the issue before the trial court and by fully embracing *South Sutter* in opposition to attorney fees. We will not hold that there is forfeiture. First, *South Sutter*'s compatibility with *Baral* is a pure question of law that is based on undisputed facts. Under these circumstances, we exercise our discretion to consider the issue. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907.) Second, Williams distinguished *South Sutter*, argued how *South Sutter* may apply to the second SLAPP question *assuming* it was not distinguishable, and denied that *South Sutter* was good authority related to the first SLAPP question. Thus, Williams did not "fully embrace" *South Sutter*.

18.

Because we find that three elements of issue preclusion were not met, we disagree with Respondents.[8]

### a. *Elements*

### 1. Identical Issues

The First Lawsuit's Fee Order did not address the identical issue as the SLAPP order. True, the general issue of whether the first step of the SLAPP framework was met was an issue in the Fee Order and the SLAPP order. However, as explained above, that general issue is resolved by examining the particular factual allegations in the operative complaint, specifically the allegations that both constitute protected activity and fulfill an element of a cause of action. (*Bonni*, *supra*, 11 Cal.5th at pp. 1009–1012, 1015; *Baral*, *supra*, 1 Cal.5th at p. 396; *Pech*, *supra*, 75 Cal.App.5th at p. 459.) Factual allegations that do not satisfy these criteria are disregarded. (*Bonni*, at pp. 1010–1012; *Baral*, at p. 396; *Pech*, at p. 459.) Thus, the analysis is specific to the particular allegations made in a complaint.

Here, there is no dispute that the FAC omitted allegations from the First Lawsuit's SAC involving speech during a peer review process and speech concerning Williams's competence as a licensed physician. There is also no dispute that these two types of speech constitute protected activity under section 416.25, subdivision (e), and the SLAPP motions and fee motions in the First Lawsuit only identified these two types of speech as the protected activity at issue. Importantly, the only protected activity identified in the First Lawsuit's Fee Order involved peer review or comments about Williams's competence.

---

[8] The Hospitalist Respondents state that even though they believe the elements of claim preclusion have also been met, they choose to focus their arguments on issue preclusion. Because the Hospitalist Respondents do not actually develop an argument in support of claim preclusion, the argument is waived. (See *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808; *City of Santa Maria v. Adam*, (2012) 211 Cal.App.4th 266, 287; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

The omission of these protected activities from the FAC means that no cause of action includes or can be based on these protected activities. Respondents do not identify any allegations in the FAC that constitute protected activity and form the basis of any claim, and no such allegations are apparent to us. This is consistent with Williams's briefing and the FAC which both state that there are none. Therefore, the factual allegations in the FAC are not identical to the factual allegations in the First Lawsuit's SAC, and there has been no showing that a factual allegation that forms the basis of any of the FAC's causes of action or claims was determined to constitute protected activity by the First Lawsuit's Fee Order. Without specific and materially identical allegations of protected activity supplying elements of causes of action or claims in both the First Lawsuit's SAC and the Second Lawsuit's FAC, the issues involved in the First Lawsuit's Fee Order are not identical to the issues involved in the SLAPP order. (See *Hernandez*, *supra*, 46 Cal.4th at p. 511 [explaining that identical issues element refers to " 'identical factual allegations' "].)

## 2.    Actually Litigated

An issue is "actually litigated" if it was "properly raised, submitted for determination, and determined in [a] proceeding." *Hernandez*, *supra*, 46 Cal.4th at p. 511. In part, the First Lawsuit's Fee Order held that, considering SLAPP protected peer review and comments on competency, "the SAC's causes of action were problematic." We are not satisfied that this language means that the issue of whether all causes of action or claims in the First Lawsuit's SAC arose from protected activity was actually litigated.

In terms of the briefing or issue submitted, the Respondents' anti-SLAPP motions in the First Lawsuit sought to dismiss or strike only claims that "arose from protected activity," not "all claims." Similarly, the DMC Respondents' fee motion, which was incorporated by reference in the Hospitalist Respondents' fee motion, explained that their anti-SLAPP motion attempted "to strike *many* of [Williams's] claims .…" (Italics

20.

added.)  Of course, "many" does not mean "all."  Further, Respondents' anti-SLAPP motions and fee motions in the First Lawsuit identified the protected activity only as statements made in connection with the peer review process and comments about Williams's competence.  Therefore, the relevant briefing recognizes that not all claims in the First Lawsuit's SAC were subject to being stricken, rather, only claims based on comments in connection with peer review and statements about Williams's competence and qualifications were at issue.  That is, the motions indicate that the issue of whether all causes of action or claims in the SAC arose from protected activity was not submitted and tried.

In terms of what was actually determined, the First Lawsuit's Fee Order concluded that the allegations in the First Lawsuit's SAC were "based almost entirely upon [protected activity]," the protected activity was not incidental, and "[w]hether broadly construed as part of the peer review process, or as statements and comments … related to a physician's 'qualifications and competence – the SAC's causes of action were problematic."  We agree with Williams that the use of the phrase "almost entirely" of necessity means either "not all" of the allegations involved protected activity or "some allegations" did not involve unprotected activity.  Further, and consistent with Respondents' briefing, the order indicates that the protected activity at issue is comments made in connection with peer review or statements about Williams's competence.  However, the First Lawsuit's Fee Order does not identify what allegations involve unprotected activity, which claims are based on unprotected activity, or which claims were based on protected activity.  This is not surprising considering that the litigation had terminated through Williams's dismissal (thus negating the need to determine which claims could proceed), and the court's first step SLAPP analysis required it to disregard allegations of, and claims that arise from, unprotected activity.  (*Bonni*, *supra*, 11 Cal.5th at pp. 1009–1012; *Baral*, *supra*, 1 Cal.5th at p. 396.)

21.

Considering the protected activity identified, the recognition that not all allegations involved protected activity, the briefing submitted, and the procedural posture of the case, it is not clear that a finding that "the SAC's causes of action were problematic" means that all causes of action in the First Lawsuit's SAC are based on protected activity. Therefore, we conclude that there is uncertainty about what was actually litigated and determined through the First Lawsuit's Fee Order. That uncertainty is resolved against application of issue preclusion. (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, *supra*, 231 Cal.App.4th at p. 186; *Shopoff & Cavallo LLP v. Hyon*, *supra*, 167 Cal.App.4th at p. 1520; *Silver v. Los Angeles County Metropolitan Transportation Authority*, *supra*, 79 Cal.App.4th at p. 357; *Flynn v. Gorton*, *supra*, 207 Cal.App.3d at p. 1554; *Eichler Homes, Inc. v. Anderson*, *supra*, 9 Cal.App.3d at p. 234.)

### 3.    "Necessarily Decided"

As indicated in the previous point, prior to and apart from the attorney fees motion, the First Lawsuit had terminated and was not going forward. This made it unnecessary for the trial court to determine which specific causes of action or claims based on protected activity would be stricken and which claims based on unprotected activity would proceed. For purposes of the attorney fees motion, which did not include a challenge by Williams as to the amount of fees requested, it was enough to determine that Respondents had generally shown there were allegations of protected activity that formed the basis of some causes of action or claims in the First Lawsuit's SAC.[9] Further,

---

[9] If a complaint is dismissed while an anti-SLAPP motion is pending, it is agreed courts retain jurisdiction to award fees so that the deterrent effect of the SLAPP statute is not undermined. (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732–733.) The framework for awarding fees in the context of a voluntary dismissal, however, is unsettled. (*Id.* at p. 733.) Some courts require a lower court to determine whether the defendant is the prevailing party due to achieving its litigation objectives through the dismissal. (E.g., *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107). Other courts require the lower court to determine whether the defendant's anti-SLAPP motion would have been granted had the plaintiff not dismissed its case; if the motion would have been granted, the defendant is the prevailing party. (E.g. *Tougeman v. Nelson & Kennard*

22.

allegations of, and causes of action or claims based on, unprotected activity are disregarded for purposes of an anti-SLAPP motion. (*Bonni*, *supra*, 11 Cal.5th at pp. 1009–1012; *Baral*, *supra*, 1 Cal.5th at p. 396.) Because such allegations and claims are disregarded, and the First Lawsuit had already terminated, any determinations regarding which specific causes of action or claims were based on allegations of protected activity, and which were based on allegations of unprotected activity, would seem to be " ' "entirely unnecessary" ' " to resolution of the fee motions. (*Samara v. Matar*, *supra*, 5 Cal.5th 322 at p. 327.) There is at best uncertainty regarding what was necessarily decided, and we resolve that uncertainty against application of issue preclusion. (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, *supra*, 231 Cal.App.4th at p. 186; *Shopoff & Cavallo LLP v. Hyon*, *supra*, 167 Cal.App.4th at p. 1520; *Silver v. Los Angeles County Metropolitan Transportation Authority*, *supra*, 79 Cal.App.4th at p. 357; *Flynn v. Gorton*, *supra*, 207 Cal.App.3d at p. 1554; *Eichler Homes, Inc. v. Anderson*, *supra*, 9 Cal.App.3d at p. 234.)

### b.  *Judicial Admission*

The Hospitalist Respondents contend that Williams has judicially admitted through allegations in the FAC that "each of the claims he alleged in the first lawsuit 'would not survive' the anti-SLAPP motions filed by respondents and that this was the reason he filed a voluntary dismissal." We disagree that Williams has made a judicial admission.

"Judicial admissions are admissions of fact that 'may be made in a pleading, by stipulation during trial, or by response to request[s] for admission.' " (*BMC Promise Way, LLC v. County of San Benito* (2021) 72 Cal.App.5th 279, 285–286.) "[I]f a factual

(2014) 222 Cal.App.4th 1447, 1457–1458). The parties cite to and rely on *Tougeman* in their briefing and do not discuss *Coltrain*. Because the result will not change, we need not formally choose between *Coltrain* and *Tougeman*, but will follow the parties' lead and accept *Tougeman* for purposes of this order. (*Ross*, at p. 733.)

allegation is treated as a judicial admission, then neither party may attempt to contradict it—the admitted fact is effectively conceded *by both sides*." (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452.) However, judicial admissions pertain to factual allegations—they do not involve legal theories, legal conclusions, legal arguments, or assertions concerning mixed questions of law and fact. (See *In re Marriage of V.S. & V.K.* (2023) 97 Cal.App.5th 219, 229; *BMC Promise Way*, at p. 286; *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 636–637; *Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384.) Further, a judicial admission is an unequivocal concession of the truth of a matter. (*Perez v. Galt Joint Union Elementary School District* (2023) 96 Cal.App.5th 150, 171.) Thus, unclear, equivocal, uncertain, or ambiguous statements do not create binding judicial admissions. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 515–516; *Stroud v. Tunzi*, at p. 385; *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1066.)

In pertinent part, the FAC alleged that Williams dismissed the First Lawsuit "because he believed that [the First Lawsuit's] focus on peer review and speech activities would not survive the [Respondents'] anti-SLAPP motion[s]." The FAC also alleged that the First Lawsuit "focused on the huge amount of false information that [Respondents] disseminated as part of their campaign to destroy Dr. Williams's medical practice. However, as described above, a lawsuit that focuses on that type of speech is subject to successful attack by an anti-SLAPP motion."

We conclude the above allegations are not judicial admissions for at least two reasons. First, they do not deal with facts. The allegations deal with Williams's opinion about the probable outcome of the Respondents' anti-SLAPP motions and his belief that claims based on speech related to medical practitioners are subject to successful SLAPP attacks. Williams's subjective beliefs may explain his actions, but they do not speak to the content or makeup of all the claims, or even a specific claim, in the SAC. Moreover, even if the allegations can be read as assertions that all claims in the SAC were subject to

24.

dismissal by a SLAPP motion, and thus, all claims are based on SLAPP protected activity, such a reading involves a legal conclusion because protected activity is determined by comparing alleged conduct to four statutorily defined categories of protected activity. (*Navellier*, *supra*, 29 Cal.4th at p. 88.) Therefore, the allegations at issue involve subjective beliefs that relate to legal theories, legal conclusions, or assertions regarding mixed questions of law and fact, none of which may constitute a judicial admission. (See *In re Marriage of V.S. & V.K.*, *supra*, 97 Cal.App.5th at p. 229; *BMC Promise Way, LLC v. County of San Benito*, *supra*, 72 Cal.App.5th at p. 286; *Eisen v. Tavangarian*, *supra*, 36 Cal.App.5th at pp. 636–637; *Stroud v. Tunzi*, *supra*, 160 Cal.App.4th at p. 385.)

Second, the allegations are not clear. The allegations do not identify any specific claim or cause of action, or the basis of any specific claim or cause of action, found in the SAC. Instead, the allegations merely acknowledge that the "focus" of the SAC generally would be problematic under the SLAPP statute. Acknowledging a problem about the "focus" of the lawsuit is not the same as explaining what each claim is actually based on, nor is it the same as agreeing that all claims in the SAC were based on protected activity. While it is fair to read the allegations as acknowledging that some claims would be subject to being stricken, "some" does not mean "all." Accordingly, the relevant allegations are not sufficiently clear to constitute judicial admissions. (*Stroud v. Tunzi*, *supra*, 160 Cal.App.4th at p. 385; *Kirby v. Albert D. Seeno Construction Co.*, *supra*, 11 Cal.App.4th at p. 1066.)

### c.     *Evasion of Prior SLAPP Ruling*

Respondents contend that if issue preclusion is not applied in this case and the trial court's SLAPP order is reversed, then Williams will have effectively amended the First Lawsuit's SAC in contravention of the SLAPP statute's purposes. We disagree.

First, Williams did not amend the SAC, he voluntarily dismissed the First Lawsuit. The voluntary dismissal was made prior to any hearing or ruling by the trial court.

25.

Courts recognize that such voluntary dismissals terminate the case and eliminate the jurisdiction of the lower court to formally rule on the anti-SLAPP motion; the lower court merely retains limited jurisdiction to rule on a SLAPP motion for attorney fees. (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732–733; *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 881; see also *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909–910.) Therefore, there was nothing improper about Williams's voluntary dismissal. Further, because the dismissal was without prejudice, Williams remained free to file a new lawsuit, which he did. (*Wells v. Marina City Properties, Inc.*, 29 Cal. 3d 781, 784; *Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 455; *Nolan v. Workers' Compensation Appeals Bd.* (1977) 70 Cal.App.3d 122, 128; see also *Burke v. Chamberlin & Co.* (1942) 51 Cal.App.2d 419, 429.) What Williams could not avoid through dismissal was the attorney fees motion. (*Ross*, at pp. 732–733.) However, while Williams did oppose the motion for attorney fees, Williams did not appeal the award of attorney fees, and he paid Respondents the full amount ordered. Therefore, Williams properly exercised his right to dismiss and did not subvert the SLAPP statute by evading attorney fees as the consequence for pursuing SLAPP causes of action.

Second, Williams agrees with the DMC Respondents' characterization of the FAC as representing a subset of the First Lawsuit's SAC's claims against a subset of the SAC's defendants. However, other than reliance on issue preclusion, Respondents do not contradict Williams's assertions and arguments that the FAC does not contain causes of action that arise from protected activity. Given these considerations, permitting the Second Lawsuit to proceed is consistent with what would happen in all cases involving mixed causes of action. With mixed causes of action, claims based on unprotected activity would not be subject to being stricken, while claims based on protected activity would; the result being that the entire lawsuit would not terminate through the granting of an anti-SLAPP motion. (See *Bonni*, *supra*, 11 Cal.5th at p. 1012, fn. omitted ["Conversely, to the extent any acts are unprotected [by the SLAPP statute], the claims

26.

based on those acts will survive"].) Therefore, under the circumstances of this case, the policy behind the SLAPP statute has been fulfilled – all of Williams's claims arising out of protected activity are gone, Williams paid attorney fees for pursuing SLAPP claims, and the only claims remaining are those that arise from unprotected activity that do not implicate the SLAPP statute.[10]

### 3. Conclusion

The SLAPP order and the parties rely on issue preclusion to establish the first step of the SLAPP framework. We have concluded that issue preclusion does not apply in this case. Without application of issue preclusion, we conclude that the Respondents did not meet their burden of showing that any cause of action or claim in the FAC arose from SLAPP protected activity. Because only causes of action that satisfy both steps of the SLAPP framework are subject to being stricken, (*Navellier*, *supra*, 29 Cal.4th at p. 89), the SLAPP order must be reversed, and it is unnecessary for us to address whether Williams met his burden under the second step.[11]

---

[10] For a similar reason, we reject the Hospitalist Respondents' argument that the second lawsuit is based on a sham complaint. Under the principle of truthful pleading, if a " 'plaintiff pleads inconsistently in separate actions, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer.' " (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.) Here, the Second Lawsuit's FAC contains the subset of claims that were both alleged in the First Lawsuit's SAC and not based on SLAPP protected activity. If Appellant had not voluntarily dismissed the SAC, the claims alleged in the FAC would still be proceeding in the first lawsuit because those claims would not have been dismissed through the SLAPP process. (See *Bonni*, *supra*, 11 Cal.5th at pp. 1009–1012; *Baral*, *supra*, 1 Cal.5th at p. 396.) Therefore, the SAC and the FAC are not inconsistent pleadings, and the FAC is not a sham.

[11] The Hospitalist Respondents argue that any error in the SLAPP process was harmless because the Second Lawsuit's FAC is subject to dismissal through a demurrer. We are not persuaded for several reasons. First, the argument is based largely on the trial court's dismissal through a demurrer of the original complaint. Thus, the demurrer involved a now inoperative complaint, and did not and could not involve the FAC. Second, the SLAPP analysis actually at issue in this appeal is materially different from the analysis of a demurrer. The SLAPP analysis does not concern itself with the sufficiency of pleadings, and no court has actually assessed whether a second demurrer

27.

## II. Second Lawsuit's Attorney Fees Award

### A. *Parties' Arguments*

Williams argues that because the SLAPP order must be reversed, the Second Lawsuit's dependent award of attorney fees under section 425.16, subdivision (c) must also be reversed. Additionally, in reply, Williams argues that the second appeal was properly filed and that neither dismissal nor sanctions for filing the appeal are appropriate.

Respondents argue that the award of attorney fees is dependent on the outcome of the first appeal and that a reversal of the SLAPP order necessarily entails a reversal of the subsequent fee award. As a result, the second appeal was unnecessarily filed and should be dismissed. Additionally, through a separate motion, the Hospitalist Respondents move to dismiss and request sanctions against Williams for filing the second appeal.

### B. *Analysis*

#### 1. Propriety of the Second Appeal

Contrary to Respondents' contentions, case authority is not uniform in its treatment of dependent fee awards. Some appellate courts hold that, even without a separate appeal, they have the authority to reverse dependent fee awards when the underlying judgment is also reversed. (E.g., *Ulkarim v. Westfield LLC* (2014)

---

would be sustained. (Cf. *Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 92 ["… regardless of the potential vulnerability [through a demurrer] of the claims against [defendant], our review here is limited to the trial court's anti-SLAPP ruling …"].) Were we to agree with the Hospitalist Respondents, we would in effect be issuing an advisory opinion. Finally, it is unclear that the entire FAC would actually be dismissed without leave to amend through a demurrer. We are not satisfied that the Hospitalist Respondents' have made an adequate assessment of each cause of action, and Appellant replies that some of the facts he raised in this appeal could be added in support of the FAC. This means that the issue of a final dismissal is not readily ascertainable from the face of the FAC or the briefing submitted in this appeal. The Hospitalist Respondents' argument is more appropriately made to the trial court through a properly briefed demurrer.

227 Cal.App.4th 1266, 1282; *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1027.) Other courts hold that they have authority to reverse a fee award only when the judgment and fee award are appealed together in a single appeal or appealed separately in two appeals. (E.g., *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1007–1008; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284.) Additionally, some courts have noted that " ' "[w]hen a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals*: one from the final judgment, and a second from the postjudmgent order." ' " (*Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 762 [quoting *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222].)

Williams's course of action aligns with the cases such as *Allen* and *Nellie Gail Ranch Owners*. Considering the conflicting case authority, as well as the normal appellate practice described by *Westmont College* and *Torres*, we cannot conclude that Williams improperly filed the second appeal, that dismissal of the second appeal is mandatory or appropriate, or that sanctions for filing a frivolous appeal are appropriate.[12]

### 2.  Validity of the Second Lawsuit's Attorney Fees Award

Mandatory attorney fees and costs are to be awarded to a prevailing defendant on a special motion to strike. (See § 425.16, subd. (c)(1); *Ross v. Seyfarth Shaw LLP*, *supra*, 96 Cal.App.5th at p. 744.) Because we have concluded that the SLAPP order must be reversed, the award of attorney fees under section 425.16, subdivision (c)(1) must also be reversed because Respondents are no longer prevailing defendants. (See *Ulkarim v. Westfield LLC*, *supra*, 227 Cal.App.4th at p. 1282; *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1123; *Allen v. Smith*, *supra*,

---

[12] The Hospitalist Respondents through a separate motion request that we dismiss Williams's challenge to the fee award in part so that they do not need to expend any further resources. This argument is surprising since all agree that the trial court's award of attorney fees rises or falls with the SLAPP order.

29.

94 Cal.App.4th at p. 1284; *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402.)

## DISPOSITION

The order granting Respondents' anti-SLAPP motions and the order granting Respondents attorney fees are reversed.

The Hospitalist Respondents' motion to dismiss and request for sanctions are denied.

This matter is remanded to the Superior Court of Stanislaus County for further proceedings consistent with this order.

Appellant is awarded costs on appeal.

POOCHIGIAN, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.